**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| | |
| **v.** | **Docket No. 1:18-CR-11** |
| | **JUDGE MATTICE** |
| **JERRY WAYNE WILKERSON,** | **MAGISTRATE JUDGE STEGER** |
| **MICHAEL CHATFIELD,** | |
| **KASEY NICHOLSON,** | |
| **BILLY HINDMON, and** | |
| **JAYSON MONTGOMERY** | |
| **Defendants.** | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT MICHAEL CHATFIELD'S MOTION TO STRIKE
SURPLUSAGE FROM THE SECOND SUPERSEDING INDICTMENT**

---

Comes now the Defendant, Michael Chatfield, by and through undersigned counsel, and submits this memorandum in support of the simultaneously-filed motion to strike surplusage from the second superseding indictment, pursuant to Fed. R. Crim. P. 7(d).

**I.      Immaterial and irrelevant allegations are surplusage subject to removal by the Court.**

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment "to be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The advisory committee states, "[t]his rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Id. Advisory Committee Notes.

The Court has discretion to strike surplusage when the offending language is irrelevant and prejudicial. *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993). Language in an indictment is irrelevant when it is "unnecessary to prove an offense." *United States v. Huddleston*, 2017 U.S. Dist. LEXIS 122415, at *18 (E.D. Tenn. Aug 3, 2017) (quoting *United States v. Miller,* 471 U.S. 130, 136-137 (1985)). An indictment's language is prejudicial if it serves only to "[1] inflame the jury, [2] confuse the issues, [3] and blur the elements necessary for conviction." *United States v. Huddleston*, 2017 U.S. Dist. LEXIS 122415, at *18 (E.D. Tenn. Aug 3, 2017) (quoting *United States v. Buck*, 2011 U.S. Dist. LEXIS 12958, at *4 (E.D. Mich. Feb. 9, 2011)).

## II.    The description of compounding pharmacies in Paragraph 7 of the Second Superseding Indictment is irrelevant, confusing, and misleading.

The Government defines compounding pharmacies by inaccurately implying that compounding pharmacies do not have proper oversight and regulation and by giving irrelevant examples of uses of compounding pharmacies to unfairly imply that the compounding products offered in this case were not a legitimate compounding practice. In the accompanying motion, Mr. Chatfield moves to strike a portion of paragraph 7 in the following manner:

> "Compounding" is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist , combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. "Compounding pharmacies" are businesses that specialize in creating compounded medications. ~~The FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. Compounded drugs may be prescribed when an FDA approved drug does not meet the health needs of a particular patient. For example, a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction. Compounded drugs may also be prescribed when a patient cannot~~

~~consume a medication by traditional means, such as an elderly patient or~~
~~child who cannot swallow an FDA-approved pill and needs the drug in a~~
~~liquid form that is not otherwise available.~~

A. *Compounding pharmacies are regulated by the Food and Drug Administration and subject to state regulation. The current statement is misleading, irrelevant, and prejudicial.*

Paragraph 7 of the indictment states, in part, "The FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs." (Second Superseding Indictment, ¶7). While this statement is not inaccurate, it is misleading without context. The statement as it stands implies that compounding pharmacies lack proper regulation and oversight. In reality, the Food and Drug Administration regulates compounding pharmacies pursuant to Sections 503A and 503B of the Federal Food, Drug, and Cosmetic Act. The FDA still regulates the integrity of the drugs and active pharmaceutical ingredients from which they are made.

State boards of pharmacy are primarily responsible for state-licensed compounding pharmacies, although the FDA still has the ability to conduct inspections of those facilities.[1] The pharmacies at issue in this indictment are subject to state regulation, inspection, and oversight. See La. R.S. Title 37 Chapter 14 § 1224; See also Florida Administrative Register 64B16-27.700 (in addition to state requirements, Florida requires compliance with 21 U.S.C. §353b).

First, the isolated statement that compounding products are not FDA-approved is irrelevant and does not need to be proven as an element of conspiracy, health care fraud, wire

---

[1] https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers

fraud, mail fraud, illegal remuneration, money laundering, or aggravated identity theft.

Second, this misleading description is prejudicial. By claiming that the products that Mr. Chatfield and his co-defendants are alleged to have marketed are not FDA-approved, it unfairly implies that the compounding products are not legitimate. This has the potential to inflame the jury. It will also confuse the issues because the jury may incorrectly believe that there is something wrong with marketing compounding products that are not FDA-approved and tested. For the same reason, the elements necessary for conviction will be blurred.

Because the statement regarding the FDA's lack of involvement in verifying the safety, potency, and effectiveness of medication is not relevant and is likely to unfairly prejudice the jury, it should be struck.

B. *Compounded drugs are used for a variety of purposes in addition to the ones listed in the indictment. The narrow list of examples is irrelevant, prejudicial, and misleading, and should be struck.*

Compounding pharmacies create medications for a variety of purposes, including the purposes listed in the indictment, but there are numerous other purposes. For example, compounding pharmacies have compounded medications to fulfill drug shortages. Compounding pharmacies may simply add flavor to liquid medication for children. Relevant to this case, they can create pain management creams that do not include opioids or other scheduled drugs as an alternative to prescription opioids.

By including a narrow list that excludes the practices employed by the compounding pharmacies in this case, the indictment unfairly implies that the use of compounding medications for pain management and skin treatment medications is inappropriate. First, the fact that

MEMORANDUM IN SUPPORT OF DEFENDANT MICHAEL CHATFIELD'S MOTION OT STRIKE SURPLSAGE FROM THE SECOND SUPERSEDING INDICTMENT

compounding drugs may be used when a patient has an allergy or when a child or elderly person cannot ingest medication in its traditional form has no relevance to this case and is not a required element that the Government would prove at trial. Second, the implication is unfairly prejudicial because it may inflame the jury if they incorrectly believe that the examples in the indictment are the only justified uses of compounded medications. Likewise, this description would be confusing to the juries because the examples are unlikely to be referred to during the proof in this case. It would also blur the issues necessary for conviction if the jury incorrectly believes that the compounded creams at issue in this case are not a legitimate reason to use a compounding pharmacy. Because these examples are irrelevant and prejudicial, they should be struck.

### III. The use of scare quotes around words in paragraphs 2, 4, 8, and 11 are confusing and inappropriately placed.

Paragraph 4 of the second superseding indictment states, in part, "Sometimes, the customers would be given a 'commission' on creams/medications that the customers themselves ordered." [Doc. 65, Second Superseding Indictment, ¶4]. Paragraph 8 of the indictment states, in part, "The customers were also encouraged to order 'wellness' pills or other types of medications that were not creams." [Id., ¶8]. Paragraphs 2 and 11 state that customers were compensated for "participating in an 'evaluation,' trial' or study[.]'"

Using quotation marks to offset a word to be followed by a definition is standard, and the punctuation is employed for that purpose in other parts of this indictment. See [Id., ¶¶ 5-7]. However, when quotation marks are used to designate a term as ironic, they are called "scare quotes." *The Chicago Manual of Style*, Sec. 7.55, 16th Ed. (2010). Scare quotes are also known as sneer quotes. *Edwards v. Schwartz,* 2019 U.S. Dist. LEXIS 45553 at *158 (W.D. Va. March 19, 2019)

(referring to the practice as a "peculiar use of quotation marks"). Scare quotes "imply, 'This is not my term' or 'This is not how the term is usually applied.'" *The Chicago Manual of Style*, Sec. 7.55, 16th Ed. (2010). The style manual "discourages that practice unless it is essential to the author's argument and not confusing to readers." *Id. See also IBM v. ACS Human Servs., LLC,* 999 N.E.2d 880, fn. 5 (Ind. Ct. App. 2013) (citing Bryan A. Garner, <u>Legal Writing in Plain English: A Text With Exercises</u> 157 (2001), to note"[t]he term, scare quotes, convey the idea that what is labeled in quotes is 'so-called-but-not-really.'"); *see also Duquesne Light Holdings, Inc. v. Comm'r*, 861 F.3d 396, fn. 1 (3d Cir. 2017) (noting that scare quotes are used as a rhetorical device); *see also Luna v. Commonwealth*, 460 S.W.3d 851, 885 (Ky. 2015) (stating that scare quotes were used by the prosecution as an attempt diminish aspects of unfavorable testimony); *see also Plumbers' Local Union No. 690 Health Plan v. Sanofi, S.A.,* 2016 U.S. Dist. LEXIS 62673, at fn. 8 (D.N.J. May 11, 2016) (noting that a word was placed in scare quotes "presumably to cast doubt upon it."); *see also George v. Kraft Foods Global, Inc.*, 641 F.3d 786, fn. 11 (7th Cir. 2011) (noting the dissenting opinion's use of scare quotes around the word "expert" is used to imply that the expert's opinion is a sham).

Courts have recognized that the use of scare quotes can be confusing and give rise to incorrect assumptions. *See Counts v. General Motors, LLC,* 2017 U.S. Dist. LEXIS 60031 at *9 (E.D. Mich. Apr. 20, 2017) (clarifying that the court's use of scare quotes in a prior order was not meant to signify an implication as the defendant believed but to signify a term of art); *see also Guthrie v. Ditech Fin.,* 2017 U.S. Dist. LEXIS 218450 at *6-7 (W.D. Tex. Apr. 20, 2017) (noting that the plaintiffs' use of scare quotes around terms denoting a conclusion that the plaintiffs disagreed with made the allegations difficult to ascertain); *See also Apple Inc. v. Samsung Elecs. Co.*, 2012

US. Dist. LEXIS 115366 at *15 (N.D. Cal. Aug. 15, 2012) (noting that use of scare quotes in quoted testimony was "objectionable"); *Super Pawn Jewelry & Loan, LLC, v. Am. Envtl. Energy, Inc.*, 2013 U.S. Dist. LEXIS 45112 at *11 (N.D. Ill. March 29, 2013) (referring to the use of scare quotes in a civil complaint as "odd").

In this case, the term "commission" is not inaccurate and does not need to be distinguished by scare quotes. The allegation in paragraph 4 is that customers received a commission for creams they ordered. The indictment can simply read, "Sometimes, the customers would be given a commission on creams/medications that the customers themselves ordered." This is plain, concise, and definite. *See Fed. R. Crim. P. (7)(1)*. It provides adequate notice. If there is some nefarious meaning to commission other than its ordinary one, then the Government should specifically plead that in the indictment.

Likewise, in paragraph 8, the allegation is that customers ordered wellness pills and other medications in addition to the topical creams. The indictment can simply read, "The customers were also encouraged to order wellness pills or other types of medications that were not creams." The word "wellness" does not need to be offset. The compounding pharmacies referred to the product as wellness pills, and the product were designed to improve overall health. If the Government believes that the pills were for a purpose other than "wellness," then it should be specifically pleaded in the indictment.

Finally, the scare quotes used in paragraph 2 and 11 indicate that participants did not participate in a legitimate evaluation, trial, or study. If that is indeed the allegation, the Government should specify that. The scare quotes should be removed.

The high probability of misunderstanding the tongue-in-cheek use of scare quotes in this indictment flies in the face of the "plain, concise, and definite" language requirement of Rule 7(c) of the Federal Rules of Criminal Procedure. This rule codifies the requirements contained in Mr. Chatfield's Fifth Amendment right to notice. *See Hamling v. United States*, 418 U.S. 87, 117 (174) (holding that an indictment must state the elements of an offense "fully, directly, and expressly"); *See also United States v. Landham*, 251 F.3d 10722, 1079 (6th Cir. 2001). Scare quotes are a rhetorical device that relies upon the author making implications and the reader drawing inferences, which is the opposite of express language. Scare quotes are sarcastic and use double meaning, which is the opposite of definite language. The scare quotes should be struck in order to comply with constitutional notice requirements and the requirements of Rule 7(c).

**Conclusion**

Federal Rule of Criminal Procedure 7(d) and the Fifth Amendment require the Court to strike surplusage which has shown to be irrelevant and prejudicial. Mr. Chatfield respectfully requests this Court find his motion well-taken and strike the irrelevant and prejudicial information contained in paragraph 7 of the indictment relating to compounding pharmacies and to strike the problematic scare quotes from paragraph 2, 4, 8, and 11 of the indictment.

Case 1:18-cr-00011-HSM-CHS   Document 103   Filed 05/28/19   Page 8 of 9   PageID #: 465

Respectfully submitted this 28th day of May, 2019.

*s/ David M. Eldridge*

DAVID M. ELDRIDGE (BPR # 012408)
ZACHARY R. WALDEN (BPR #035376)
ELDRIDGE & BLAKNEY, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010

*Attorneys for Michael Chatfield*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This 28th day of May, 2019.

*s/ David M. Eldridge*

DAVID M. ELDRIDGE

MEMORANDUM IN SUPPORT OF DEFENDANT MICHAEL CHATFIELD'S MOTION OT STRIKE
SURPLSAGE FROM THE SECOND SUPERSEDING INDICTMENT