UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE AT
CHATTANOOGA

UNITED STATES OF AMERICA

v.  Case No. 1:18-cr-11
    Judge Mattice/Steger

JERRY WAYNE WILKERSON,
MICHAEL CHATFIELD,
KASEY NICHOLSON,
BILLY HINDMON, and
JAYSON MONTGOMERY

_____

## DEFENDANTS' JOINT REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR RELEASE PENDING APPEAL

Defendants Jerry Wayne Wilkerson, Michael Chatfield, Kasey Nicholson, Billy Hindmon, and Jayson Montgomery, by and through undersigned counsel, hereby file this reply to the government's response in opposition to their request for bond pending appeal, pursuant to 18 U.S.C. § 3143(b).

In this reply, the defendants target one particular erroneous conclusion in the government's filing. The government incorrectly asserts that the defendants "have pointed to nothing in the record, and the government has been unable to locate any statements, that suggests the Court ignored its own legal standards." (Doc. No. 561, Government's Response in Opposition to Defendant's Joint Motion for Release Pending Appeal, Page ID#11733.)

The defendants offer here, and intend to show on appeal, numerous additional examples from trial and sentencings in which the Court applied an incorrect legal standard in relation to two critical issues. First, the Court applied the incorrect legal standard when it held that the price of the compounded medications was proof of the fraud. In so doing, it strayed from the elements

1

of the health care fraud statute. The price of a product of service is irrelevant to a finding of fraud. Second, the defendants assert that the Court incorrectly inferred a duty by the defendants to disclose the price of the compounded medications to either the patients or the insurer.

**A. The Court's Conclusions that the 'Price is the Fraud' Is a Misapplication of the Legal Standard.**

In their Joint Motion for Bond Pending Appeal, the defendants cited several statements by the Court at sentencings in which the Court concluded that the price of the compounded creams was indicative of fraud. None of the elements of the fraud statute require courts to examine the cost of a product or service in determining whether the conduct was fraudulent. Because the Court made such a finding here, its incorrect application of the law is subject to *de novo* appellate review. Legal conclusions are subject to *de novo* review. *United States v. Miller*, 734 F.3d 530, 539 (6th Cir. 2013) The appellate court must conduct an independent review of the facts as applied to the appropriate legal standard.

Early in the trial, the Court seemed skeptical about the presence of fraud since the insurers paid the PBM's prices for the compounded creams that were set by their contractual agreement. During testimony from Zachary Rice, the Court observed, "[w]ell, wait a minute. If Tricare was told how much the product was and paid the bill, please tell me what's fraudulent about that." (Doc. 299, Zachary Rice Testimony Transcript, PageID# 1965-66.)

By the close of the government's proof, the Court was entertaining the idea that although there was nothing illegal about the cost of these medications, it was considering the merits of the government's position that the "outrageous price that was charged to the insurance companies was the fraud so to speak." (Doc. No. 377, Rule 29 Motion Hearing Transcript, PageID #6775 – 6776.)

2

Later during the Rule 29 motions hearing, the Court made a comment that the price alone, relative to the amount of work required to earn it, would permit an inference of fraud: "But, I mean, I do think that the amounts of money involved here given the amount of work involved would permit a reasonable tryer [sic] of fact to infer that they had reason to believe something was wrong in this, you know." (Doc. No. 377, Rule 29 Motion Hearing Transcript, PageID #6867.)

When it comes to healthcare spending, the United States is without equal. From hospital stays and prescription drugs to medical equipment and related supplies, Americans spend approximately $3.5 trillion annually on healthcare. One journalist found numerous examples of egregious costs after surveying over 150 emergency room bills from across the country. A woman in New Jersey cut her ear, and was given no treatment at the emergency room aside from an ice pack, but she soon got a bill for $5,751.00.[1] The Court's reasoning that the high price of compounded creams is an indicator of fraud flies in the face of common knowledge about the exorbitantly high cost of healthcare in America. More importantly, it ignores the statutory elements of fraud, none of which relate to cost.

**B.    The Court Erred in Finding of Duty by the Defendants to Disclose the Cost of Medications.**

In finding that the defendants had a duty to disclose the cost of the creams, the Court engaged in improper statutory interpretation. A question of statutory interpretation is strictly a legal analysis, rather than a mixed question of law and fact. Therefore, it is also subject to *de novo* appellate review. The Court erred with respect to two legal issues central to a finding of

---

[1] *Available at*: https://www.vox.com/health-care/2018/12/18/18134825/emergency-room-bills-health-care-costs-america

guilt, to which *de* novo review applies. That puts the defendants in a stronger position with respect to their request for bond pending appeal.

The Court outlined the legal standard it applied to its fraud determinations in an Order. (Doc. No. 355.) One of the four factors that the Court had to find in order to convict the defendants of fraud was that the "scheme related to a material fact and/or included a material misrepresentation or concealment of a material fact." (Doc. No. 355, PageID# 3983.)

First, the Court acknowledged that the evidence did not definitively establish any affirmative misrepresentations:

> the only affirmative misrepresentations that I see in this case is maybe this thing about the study and all of that, but that goes to the patients, I'm not even sure it's really material. To me, again, the gravamen to use that term is the failure to let the insurance company know that, you know, we're defrauding you, I mean, you know.

(Doc No. 377, Rule 29 Motion Hearing Transcript, PageID# 6811.)

The Court's legal reasoning on this point was sound; the government provided no evidence of any material misrepresentations by any of the defendants. However, the government failed to present evidence of material misrepresentations *or* concealment. A material omission is rooted in a duty to disclose information. Unlike an affirmative misrepresentation that is material, fraudulent pretenses or representations can include omissions, or concealment, "where one says nothing but has a duty to speak." *United States v. Maddux*, 917 F.3d 437, 443-446 (6th Cir. 2019).

As a result, the Court had to invent a duty in order to support its finding that a material omission by the defendants flowed from this imagined duty. The Court struggled with where to find a statutory home for this nonexistent duty after hearing from several witnesses who spent their careers working in the pharmaceutical industry testify that no such duty existed. In addition

4

to the multiple comments made by the Court at sentencings about its wish that the duty were more explicit, the Court acknowledged that no court may impose a duty that is not contained within the law.

> But I think it still exists even in modern times that the duty is just a duty imposed by society that nobody really – it may or may not be typically written down, but -- now, in much more modern times after the distinction between criminal and tort law became more pronounced and developed, so to speak, and, particularly, by the time that it got over here to the United States, we got away from this idea in criminal law that that duty could just be some sort of amorphous thing found by a judge or a jury out of whole cloth.

(Doc. 377, Rule 29 Motion Hearing Transcript, PageID# 6790.)

Mr. Mark Newkirk, testifying on behalf of the defendants, noted that no contract or manual would have required *anyone* to disclose the cost of the creams. When asked whether a physician would be required to disclose such information to a patient, Mr. Newkirk said, "[t]hey're not only, you know, not required, but they don't know the cost of the medication." (Doc. No. 380, Mark Newkirk Testimony Transcript, PageID# 7456.) When asked if the pharmacy had any obligation to disclose the medication's cost, he testified that "[t]hey're not required, and in some instances, they may even be prohibited." (Doc. No. 380, Mark Newkirk Testimony Transcript, PageID# 7456.) The Court went on to ask if the pharmacy would have been actively prohibited from doing so, and Mr. Newkirk agreed that it may be. (Doc. No. 380, Mark Newkirk Testimony Transcript, PageID# 7456-57.)

Neither of the government's materiality witnesses, Mr. Steven McCall and Mr. James Gogue, testified that anyone had a duty to disclose the price of the medications. The Court noted that the contractual agreements between insurers and PBM's often went further in *prohibiting* such disclosure: "I do find it interesting that the manual prohibits disclosure of the agreement

5

between the pharmacy and Tricare to other people." (Doc. No. 332, James Gogue Testimony Transcript, PageID #3648.)

The government asked several witnesses who ordered the creams whether they would have purchased the creams had they known the cost. This was a common refrain during trial, with nearly every witness answering that they would not have ordered the creams had they known what their insurer paid for them. However, the Court acknowledged that it could not recall a time when the Court's insurance company disclosed the price it paid for a medication. (Doc. No. 334, Steven McCall Testimony Transcript, PageID# 3825)

The Court framed as a "legal question" "whether the omission to talk about price constitutes a material fact that, you know, that the people otherwise would have acted on…That's what we're talking about." (Doc. No. 286, Dena Chatfield Testimony Transcript, PageID# 1857-59.) The Court assigned a degree of legal significance to the question as to whether patients were informed about the cost of the creams, when in fact the question had no bearing on the statutory requirements of fraud:

> I don't recall anybody saying that any of the defendants actively misrepresented the overall cost or price of these medications to anyone, however, there has been repeated questions, mainly from the prosecution, about whether or not they were told how much their insurance was being billed. And the main question from the prosecution is would you have done something differently. And I can only interpret that question to be an effort to establish fraud by way of omission.

(Doc 363, Trial Transcript, PageID# 4917.)

By hearing this repeated line of questioning throughout the trial, the Court may have been led to incorrectly conclude that the disclosure of price was relevant to a determination of guilt. However, neither the price itself, nor the disclosure of the price, are related to the elements of fraud.

6

During Rule 29 arguments, the Court noted that the concept of duty was an issue it had considered throughout trial. The Court wondered aloud whether "the insurance companies had a right to know and what we're talking about now, from where does that duty to inform the insurance companies, from what source does it emanate?" (Doc. No. 377, Rule 29 Motion Hearing Transcript, PageID # 6804.) Toward the end of legal argument on the issue, the Court ultimately inferred a duty within the fraud statute where none exists. In so doing, it made a misstep in statutory construction:

> . . . the bigger overarching thing that I still haven't ruled on is whether or not that the statute sufficiently puts these defendants on notice. I'm not sure it does impose the traditional duty to disclose. What I am sure of or – but what I do think is the statute is broad enough to just say don't do it. Just don't do it. Because everyone would know you've got, you can't do this, and, you know, you know, that it's criminal, not to do it. And I guess what I'm saying, I don't know a better way to put it, the statute sort of just assumes that everyone would know, just don't do this.

(Doc. 377, Rule 29 Motion Hearing Transcript, PageID# 6809-10.)

**Conclusion**

A person convicted of a federal offense merits bail pending appeal if he or she is able to satisfy two requirements. First, the defendant must establish by clear and convincing evidence that he or she "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(b)(1)(A). The second requirement, in relevant part, requires a finding that the appeal "raises a substantial question of law or fact likely to result in reversal". 18 U.S.C. § 3143(b)(1)(B). The second prong of the statute is commonly referred to as the "substantial question" factor.

Perhaps the most vivid support for the defendants' argument that their appeal raises a substantial question that may result in reversal of convictions came from the Court itself, at Mr.

7

Hindmon's sentencing. There, the Court stated that its guilty verdicts on the fraud counts rested on two factors:

> Well, it's the cost, and really, I guess, ultimately there has got to be either an active misrepresentation or a failure to disclose, you know, for a fraud. And I guess that where I'm hanging my hat in terms of the verdict is the failure to disclose or the failure to notify. . . I've just stated on the record what I was thinking when I found that the acts here were fraudulent. And I think what I just stated was my, I don't know if it was consistent with what the government thought was fraudulent or not, but, you know, I held the way I held. If other judges get to look at it, they'll get to see if they think the same thing.
> (Doc. No. 546, Hindmon Sentencing Transcript, PageID# 11273)

As the Court acknowledged during trial, "if the government wants to proceed in the face of what it concedes could be reversible error, I'm inclined to let them do that. We're already into that territory. *There may well be error that is not only reversible, but would cause any conviction to be reversed here . . .*" (Doc. 365, Trial Transcript, PageID# 5202 (emphasis added.)

The defendants will argue in the Sixth Circuit that this Court made two critical legal errors that require reversal: (1) that the Court found that the price of the drugs was evidence of fraud and (2) an error of statutory interpretation in imposing a legal duty on the defendants where none existed. The defendants do not submit that the errors addressed in this pleading are by any means the sole issues on appeal. But they assert that both issues presented here are subject to *de novo* review by the circuit court, and provide a more than sufficient basis to grant all five defendants bond pending appeal.

Respectfully submitted,

*s/ Jerry Wayne Wilkerson*
14439 Garden Gate Drive
Jacksonville, Florida 32258
423.314.5702
*Pro Se*

8

s/ *David M. Eldridge*
David M. Eldridge (TN Bar #012408)
Eldridge & Blakney, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010

s/ *Zachary R. Walden*
Zachary R. Walden (TN Bar #035376)
Eldridge & Blakney, P.C.
The Cherokee Building
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902
(865) 544-2010
*Attorneys for Michael Chatfield*

*s/ Kasey Nicholson*
14439 Garden Gate Drive
Jacksonville, Florida 32258
423.314.5702
*Pro Se*

*s/ Jennifer Niles Coffin*
Jennifer Niles Coffin (TN Bar #020703)
Federal Defender Services of Eastern Tennessee, Inc.
Assistant Federal Defender
800 South Gay St., Suite 2400
Knoxville, Tennessee 37929
(615) 736-5047

*s/ Erin Rust*
Erin Rust (MO Bar #63207)
Federal Defender Services of Eastern Tennessee, Inc.
Assistant Federal Defender
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349

*s/ Gianna Maio*
Gianna Maio (TN Bar #024579)
Federal Defender Services of Eastern
Tennessee, Inc.
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349
*Attorneys for Billy Hindmon*

*s/ R. Dee Hobbs*
R. Dee Hobbs (TN Bar #010482)
P.O. Box 11308
Chattanooga, Tennessee 37401
(423) 266-6461
*Attorney for Jayson Montgomery*