| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| 2 | EASTERN DISTRICT OF TENNESSEE |
| 3 | AT CHATTANOOGA |

----------------------------------------------------------

```
                                    :
UNITED STATES OF AMERICA,           :
                                    :
          Plaintiff,                :
-versus-                            :          CR-1-18-11
                                    :
JERRY WAYNE WILKERSON,              :
MICHAEL CHATFIELD, KASEY            :
NICHOLSON, BILLY HINDMON and        :
JAYSON MONTGOMERY,                  :
                                    :
          Defendants.               :
```

----------------------------------------------------------

                                    Chattanooga, Tennessee
                                    February 4, 2020

          BEFORE:  THE HONORABLE HARRY S. MATTICE, JR.,
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

          FOR THE PLAINTIFF:

          PERRY H. PIPER, and
          FRANKLIN PEARSON CLARK
          Assistant United States Attorneys
          1110 Market Street, Suite 301
          Chattanooga, Tennessee 37402


          FOR THE DEFENDANT WILKERSON:

          MARK STEPHEN THOMAS, of
          Thomas Health Law Group, PA
          5200 SW 91st Terrace, Suite 101-B
          Gainesville, Florida 32608
                              -and-
          SETH A. SCHWARTZ, of
          Schwartz Law Group
          10365 Hood Road South, Number 104
          Jacksonville, Florida 32257

                    BENCH TRIAL
                  CHARGE CONFERENCE

FOR THE DEFENDANT MICHAEL CHATFIELD:

DAVID M. ELDRIDGE, and
ZACHARY R. WALDEN, of
Eldridge & Blakney PC
400 West Church Avenue, Suite 101
Knoxville, Tennessee 37902

FOR THE DEFENDANT KASEY NICHOLSON:

BRIAN O'SHAUGHNESSY, of
O'Shaughnessy & Carter
735 Broad Street, Suite 1000
Chattanooga, Tennessee 37402


FOR THE DEFENDANT BILLY HINDMON:

GIANNA MAIO, and
JACKSON WHETSEL, of
Federal Defender Services of Eastern Tennessee
One Central Plaza, Suite 600
835 Georgia Avenue
Chattanooga, Tennessee 37402


FOR THE DEFENDANT JAYSON MONTGOMERY:

R. DEE HOBBS, of
Hamilton County Attorneys Office
204 County Courthouse
625 Georgia Avenue
Chattanooga, Tennessee 37402

1          THE COURT:  All right.  Welcome back, everyone.

2          Okay.  We had set aside two days here, which out of

3   an abundance of caution for what I think I called in the order

4   oral arguments.  Help me think through this, what needs to be

5   accomplished before we can finally submit this case.

6          First of all, the parties have all agreed that they

7   are not going to request the Court to make specific findings

8   of fact, I think that's the terminology, under Rule 23 of the

9   Federal Rules of Criminal Procedure.  I think that's on the

10  record.  Correct me if I'm wrong, but I think that's on the

11  record.  That being the case, and I hope this is, you know,

12  I'm sure you do, too, the next to the last time we need to be

13  together on the case.  I will set a date, a tentative date,

14  and I'll explain that later, when the verdict will be read in

15  open court.

16         I'm going to take what I tell each and every juror

17  for all of these lo these many years to do, to carefully

18  consider each count as to each defendant after you've

19  considered all of the facts as shown here in the courtroom and

20  heard all of the arguments or read all of the arguments in

21  this case.  And here's my notebook, believe it or not, and you

22  can't see the little yellow stickies, 300 and some odd pages

23  of arguments.  I've read it all at least once, sometimes

24  multiple times.

25         Thank you.  Your arguments have been very fleshed

out, well fleshed out in the briefs.  I think I understand and

we'll take some opportunity today to give you an opportunity

to say whatever else you want to.  I may have a few questions,

not as many as I would have expected, quite honestly.  And

that's due to the thoroughness of your briefs.

But when the verdict is read, it will be read just

as if in a jury trial.  I'll hand the verdict form to the

clerk of court who will read out as to each defendant, just

guilty or not guilty as to that count.

So, let's talk about other things.  The record in

the case at that point will consist of the proof here that

we've all heard.  It will consist of everything that's been

filed in the case, including your closing briefs, your

post-trial briefs.  And that's good.  There is one thing

that's missing, which is my final ruling on the legal

standards that I have applied in this case.

And so, what we need to accomplish over the next

couple of days is, I think, first and foremost to give you an

opportunity to argue to me what your legal standards are.

And, by the way, the documents that are, you know, relevant

here are Document 355, which is my order defining the

applicable legal standard.  Okay.  That's number one.  And you

can treat that as if that is my proposed jury instructions.

Okay.  Then I've got Document 358, which is the motion of all

of the defendants for additional applicable legal standards.

1 Document 372, which is the motion/response of the government

2 as to legal standards. And then Mr. Wilkerson filed Document

3 373 dealing with the legal standard for the anti-kickback

4 statute. That's my understanding of the universe of things

5 that are in the record as to the applicable legal standard.

6 But, I believe, to make the record complete what you

7 need and what the record needs is my ruling finally as to the

8 legal standard that I am to apply. We can't leave that in

9 doubt in order to complete the record. So, that's one -- so,

10 I'm going to set aside as much time as anybody wants to

11 consider your arguments. And if you need, if you haven't

12 looked at your own papers in a while, I'm going to give you a

13 little chance to do that. And then everyone needs to be heard

14 and I need to make my rulings on that.

15 At that point, I believe, and you tell me if you

16 think otherwise, that the record will be complete. The case

17 will be submitted. At that point, I will do, again, what I

18 always instruct jurors to do, begin my deliberations. And

19 I'll try to do them as exactly as I have, as I say, instructed

20 jurors all of these years to do with one exception, obviously,

21 is that unlike them who are locked up in a room and have

22 nothing else to do, I will be working on other things,

23 unfortunately, many other things. But I do intend to complete

24 my task as expeditiously as I can. And, therefore, before we

25 conclude, I'm going to set a date probably, we're sitting here

1  today on Tuesday, February the 20th, I'm going to set a date

2  probably the first week in March for a tentative date when the

3  verdict will be delivered.

4       Now, having said that, I'm also going to do what I

5  also tell each and every conscientious juror to do is not set

6  an artificial deadline.  If I do need more time, which I think

7  is unlikely, I mean, obviously, I've been thinking about this

8  for a long time, but I've tried to be careful, again, not to

9  form any final decisions until all of the record is complete,

10  all of the proof and arguments are completed.  But I think

11  that will give me time to decide upon a verdict.  If it

12  doesn't, I'll notify, you know, everyone via an order that I

13  do need some more time and we'll set another date for the

14  verdict to be read.

15       So, with that, again, I think, two things

16  principally need to be accomplished.  And I don't care about

17  what order we take them.  I think that we need to have the

18  bench trial equivalent of a charge conference pursuant to Rule

19  30 of the Federal Rules of Criminal Procedure to give

20  opportunities, one, to attempt to persuade me to revise or

21  change the legal standards I set forth in Document 355.  And

22  I'll give you a chance to argue that as thoroughly as you

23  want.  And, secondly, to place on the record any objections

24  you may have to my ruling about which legal, what legal

25  standard I am going to apply.

1          Now, let me state what my understanding of the law

2   in this area is, and I'll give you an opportunity to argue

3   against it.  My job is to apply the legal standard that is a

4   correct statement of the applicable law, a correct statement

5   of the applicable law.  I am not -- and, typically, I try to

6   make that as neutral a standard as I can, you know, in

7   compliance with whatever guidance there is from the Sixth

8   Circuit, if any.  I am not required to necessarily apply a

9   standard that comports with any, any individual parties'

10  theory of the case.  And I point that out because it's now

11  clear, and I can discern from having read your briefs, that

12  every -- both the government -- you know, the government's

13  theory of what this case is about is, I will say, somewhat

14  different than all of the defendants.  And each of the

15  defendant's theory of the case is at least slightly different.

16  That's to be expected.  I mean, that's where we are.

17         So, in ruling on your objections to my proposed

18  standard, I'll keep that in mind, that I am to apply a

19  standard that constitutes a correct statement of the

20  applicable law, but I am not necessarily, I can, but not

21  necessarily, obligated to adhere to a standard that most

22  closely comports with any particular party's theory of the

23  case.  So, if you think -- if anybody thinks that's a

24  misstatement of the law I'm supposed to apply when I decide

25  upon the final legal standards, you can state that as well.

1          All right.  So, I think that's what, that's our work

2    that's cut out for us today.  I don't think that we need --

3    hopefully, we can accomplish this in, well, I hope less than

4    two days, maybe substantially less than two days.  I don't

5    know.  But I think that we, at a minimum, have to do two

6    things; one, decide upon the final applicable legal standards

7    I'm going to apply, and, two, give you an opportunity to make

8    whatever sort of closing arguments that you wish to make.

9    And, again, keep in mind, I have thoroughly read your briefs.

10   I think I understand.  I may have a few questions about some

11   discreet issues, but probably not many.

12          So, with that, does anybody have any suggestions

13   about how we should proceed, you know, and how we should

14   begin, including if anybody wants to take an initial recess to

15   read over your papers and decide what you want to argue.

16          Mr. Piper, why don't you state how you think we

17   should proceed first.  And then I'll hear from counsel for any

18   of the defendants who want to weigh in on that.

19          MR. PIPER:  Your Honor, I can always use extra time

20   to read over --

21          THE COURT:  Okay.

22          MR. PIPER:  -- the 123 pages that we filed on this.

23          THE COURT:  Well, I've read, I've read it more than

24   once, so please don't do it on my account.

25          MR. PIPER:  And I am not going to, Your Honor.  We

1    are ready to proceed however the Court deems appropriate.

2         THE COURT:  See, what about, what about if we take

3    up the equivalent of a charge conference first, so if you can,

4    if you want to tailor whatever else you have to say in the way

5    of a closing argument to legal standards that I'm going to

6    apply, we do that first.

7         Now, I don't know how long it's been.  I asked you

8    to submit those briefs later and you may need to refresh your

9    own memories, maybe not, on what you're proposing.  I will

10   tell you this.  In having read all of your papers on this, I

11   don't know that I have been persuaded yet that my applicable

12   legal standards need to be modified.  And, quite honestly,

13   most of the briefing doesn't suggest to me that they, that the

14   parties necessarily think that I've set forth an incorrect

15   statement of the law, that, although, if anybody thinks that,

16   again, as you know, legally, speak now or forever hold your

17   peace because that's, you know, because you don't preserve it

18   for an appeal, if necessary, unless you state an objection on

19   the record to my ruling.

20        MR. PIPER:  We were satisfied with the Court's what

21   I call jury instructions if the Court will just let me

22   shorthand them into jury instructions.  I forget what the

23   Court actually -- legal standards.  Legal standards.

24        THE COURT:  Yeah.

25        MR. PIPER:  But I think that our responses were to

1  some of the defendant's proposed --

2         THE COURT:  Yeah.  I think that is right.  And okay.

3  Now, what -- how -- who wants --

4         MR. PIPER:  Judge, I will say this, I'm not trying

5  to interrupt the Court.  I do think that Mr. Thomas filed

6  something on the Eighth Circuit's AKS.

7         THE COURT:  I think -- was that Document 373?

8         MR. PIPER:  I can pull it up, Judge.

9         MR. SCHWARTZ:  I believe so, Judge, yes.

10         THE COURT:  Yeah.  Okay.  And, I mean -- we need to

11  probably -- I want to address everything, you know.  And who

12  wants to speak, you know, for the defendants in terms of how

13  they think what would be the best way to make the most

14  efficient use of our time, but at the same time cover all of

15  my bases.  Do the defendants want to confer together for

16  awhile?

17         MR. ELDRIDGE:  Your Honor, can we have just a quick

18  minute?

19         THE COURT:  Yeah.  Why don't we take about a five or

20  10-minute recess.  And then the question on the table is how

21  do we proceed.  Okay?  And, you know, but I do, again, if I

22  haven't, what I've tried, I know I said it in a long way, that

23  I think that the record is not complete as to the precise

24  legal standards I necessarily apply.  And I think it's got,

25  it's critical that that be absolutely clear from the record.

1    So, let's take about a five or 10-minute recess.

2            (Short recess.)

3            THE COURT:  Okay.  How should we proceed?  Mr.

4    Eldridge, you're the only one -- well, now, you're the only

5    one still standing.  Do you want to come to the podium?

6            MR. ELDRIDGE:  Your Honor, we would like to just

7    walk through the contested issues on the jury instructions --

8            THE COURT:  Yeah.

9            MR. ELDRIDGE:  -- and make our arguments.

10           THE COURT:  I think we need to do that.  Okay.

11           MR. ELDRIDGE:  And then just have, get a ruling and

12   move forward.

13           THE COURT:  Okay.  Do you want to go first?

14           MR. ELDRIDGE:  Sure.

15           THE COURT:  And I've got the documents that I

16   mentioned all in front of me, if you want to, you know --

17           MR. ELDRIDGE:  Thank you, Judge.

18           The document that I'm referring to is Document 358,

19   which is a joint motion on behalf of all defendants.

20           THE COURT:  Yeah.  I've got it in front of me.

21           MR. ELDRIDGE:  Not -- only to add, only to add

22   applicable legal standards to the elements of the crimes as

23   defined, crimes charged as defined in the Court's filing in

24   Document 355.

25           THE COURT:  Okay.

1       MR. ELDRIDGE:  That's -- we do not have an objection

2  to the manner in which the Court has defined the alleged

3  offenses, I think Mr. Wilkerson has an issue that he would

4  want to raise as it relates to the elements of the illegal

5  remuneration charges.

6       THE COURT:  Okay.  He'll have an opportunity to do

7  that.

8       MR. ELDRIDGE:  That's correct.

9       And so, our first request is that the Court should

10  consider the standard in the Sixth Circuit pattern instruction

11  with regard to good faith.

12       THE COURT:  Uh-huh.

13       MR. ELDRIDGE:  And we, in our papers, we suggested

14  that that good faith standard be applied to conspiracy to

15  commit health care fraud, the wire fraud counts, the mail

16  fraud counts, the health care fraud counts, the remuneration

17  count, and after consultation with defense counsel, we also

18  believe that the good faith standard should also apply to the

19  charge of money laundering.

20       THE COURT:  Okay.

21       MR. ELDRIDGE:  And the -- the bar, the bar for

22  applying a good faith standard is not a terribly high bar,

23  Judge.  This case is all about the government's assertion that

24  our clients' conduct was, for lack of a better term, knowingly

25  illegal, that they --

1      THE COURT:  Yeah.

2      MR. ELDRIDGE:  -- were setting out to violate the

3  law and cheat and lie and steal.  I mean, overly simplifying

4  it.  And our position has been there are any number of reasons

5  why we would think that we were not doing anything unlawful.

6  We've got Mr. Wilkerson's business partner and a pharmacy

7  representative testified --

8      THE COURT:  Let me see if the government has any

9  objection to me considering the defendants' possible good

10  faith to everything.

11      Is there any objection to that, Mr. Piper?

12      MR. PIPER:  Your Honor, we don't believe that the

13  law allows for good faith for the Tricare kickbacks.  And we

14  cite in our brief, which I think is, it's filed six days after

15  the defendants' brief.  Certainly -- let me say what we can

16  agree with.

17      THE COURT:  Okay.

18      MR. PIPER:  Good faith applies to wire fraud, mail

19  fraud, health care fraud.

20      THE COURT:  Okay.  The government concedes that --

21  say that again, which --

22      MR. PIPER:  Good faith applies to the three major

23  frauds; wire fraud, mail fraud, health care fraud.

24      THE COURT:  What about the conspiracy?

25      MR. PIPER:  We believe, Your Honor, there is a case

1 out of the Sixth Circuit, and I cite this in our brief --

2 THE COURT: Yeah.

3 MR. PIPER: -- that questions whether good, a good

4 faith instruction, this was a surprise to me, Judge, whether

5 the good faith instruction applies to conspiracy. Now, I'm

6 not sure that I'd want to hang my hat on it, but I do have it,

7 and I can pull that case right now if the Court would like,

8 but I'm not sure that I would want to hang my hat on it. But

9 I think that the Sixth Circuit's reasoning was on conspiracy

10 which the Court has opined on numerous occasions that what the

11 defendant need to do is knowingly join the conspiracy to

12 violate the law, an agreement to violate the law. But the

13 case out of the Sixth Circuit -- and may I pull that, Your

14 Honor?

15 THE COURT: Yeah. Go ahead and take your time, and

16 then I'll give you an opportunity. Let's make this record as

17 clear as we possibly can. I don't know that I've read that

18 case. I do recall you putting it, I think, in your brief, Mr.

19 Piper, but why don't you point, if you have your brief there,

20 why don't you point to that.

21 MR. PIPER: It's *United States versus Smith*, 2015

22 case.

23 THE COURT: What does it say?

24 MR. PIPER: It says that the good faith is actually

25 a defense to the substantive fraud offense, which was not

1　charged, and, therefore, the instruction would confuse the

2　jury.  In affirming the trial court in not giving the good

3　faith instruction for the conspiracy, the instructions the

4　Court did give incorporated the substance of a good faith

5　defense.  The district court had noted that to convict a

6　defendant the government must prove she knew the conspiracy's

7　main purpose, that she knowingly and voluntarily intended to

8　join it, including intending to help advance or achieve its

9　goals.

10　　　　　THE COURT:  Okay.  But let me ask you this.  And, I

11　mean, I hear what you just quoted.

12　　　　　MR. PIPER:  And, Judge -- may I say this, too?

13　　　　　THE COURT:  Yeah.

14　　　　　MR. PIPER:  Here's what we also say, I just wanted

15　to make sure.  Accordingly, if the Court determines that the

16　good faith instruction applies to the other fraud count, the

17　government has no objection to the Court considering that

18　standard for Count 1, which is the conspiracy.

19　　　　　THE COURT:  Which is the conspiracy?

20　　　　　MR. PIPER:  Yes, sir.  It surprised me.  The *Smith*

21　case surprised me.  A little learning is a dangerous thing.

22　Alexander Pope.

23　　　　　THE COURT:  Yeah.  Thank you.  And I certainly have

24　a lot of respect for Mr. Pope who's been dead what, I think --

25　　　　　MR. PIPER:  400 years, I think, Judge.

1          THE COURT:  400 years.  But let me ask you this.

2    Doesn't it almost -- isn't good faith almost always a defense

3    if, you know, I can conclude that the defendants acted in good

4    faith, how could they have joined a conspiracy when an element

5    of the conspiracy has to be an illegal object, illegal.

6          MR. PIPER:  Sure, Judge.  That's what we say is that

7    I wouldn't want to hang my hat on the *Smith* case.

8          THE COURT:  I am going to apply the good faith

9    standard as suggested in the defendants' brief.  Now, let me

10   see where I've -- on Page 2 and this is -- the page ID for the

11   entire record is 4006.  Okay?

12         MR. PIPER:  Yes, sir.

13         THE COURT:  And I'm going to apply that good faith

14   standard to Count 1.  Counts 2 through 108, which are health

15   care fraud.  I'm going to apply it to Counts 109 through 134,

16   wire fraud.  I'm going to apply it to Counts 135 through 140,

17   mail fraud.  Maybe I've got this wrong.  Well, I'm going to

18   apply it to all of these, health care fraud, wire fraud, mail

19   fraud, health care fraud.

20         What about violation of the anti-kickback statute?

21         MR. PIPER:  We would like to address that, Judge.

22   So, in other words, just so the record is clear, one through

23   140 --

24         THE COURT:  Yes.  I'm going --

25         MR. PIPER:  -- good faith instruction will apply?

1          THE COURT:  Yes.  I'm going to consider good faith

2    on Counts 1 through 140.  Okay.

3          MR. PIPER:  All right.

4          THE COURT:  You got what you wanted, Mr. Eldridge, I

5    guess, you don't have anything else to say about that.  Right?

6          MR. ELDRIDGE:  We do have to -- we would like to

7    address its application to the illegal remuneration.

8          THE COURT:  Okay.  Now, what's the government's

9    position as to illegal --

10         MR. PIPER:  Well, first, money laundering, Judge, if

11   the Court finds that the defendants had good faith, is the

12   money laundering count tied to the anti-kickback?

13         MR. WALDEN:  I believe it's just --

14         MR. PIPER:  I think it's just the fraud.  So, in

15   reality, Your Honor, if the defendants have good faith, they

16   could not have committed an underlying offense, so the money

17   laundering --

18         THE COURT:  Money laundering.  Sort of the same

19   theory, sort of the same theory I was talking about with

20   conspiracy?

21         MR. PIPER:  Yes, sir.

22         THE COURT:  Okay.  So, what counts are the money

23   laundering?

24         MR. PIPER:  Money laundering would be the last, four

25   of the last five counts maybe, Judge.  Hold on.  That's going

1   to be 172 is Mr. Wilkerson's one count of money laundering,

2   and then 173 through 177 for Mr. Chatfield.  Actually, I

3   misspoke, it's five of the last six.

4           THE COURT:  Okay.  So, let's make the record clear.

5   I'm going to apply the good faith standard set forth on Page

6   ID 4006 to Counts 1 through 140, and, okay, money laundering

7   is what counts?

8           MR. PIPER:  172 through 177, Your Honor.

9           THE COURT:  Okay.  173 to 177.

10          MR. PIPER:  I'm sorry.  It is 172, Your Honor.

11          THE COURT:  172.

12          MR. PIPER:  Through 177.

13          THE COURT:  Through 177.  Okay.  I'll apply it to

14  all of those counts.

15          Okay.  Mr. Eldridge, are you ready to come back to

16  the podium?

17          MR. PIPER:  Judge, which leaves the kickbacks, the

18  illegal remuneration.

19          MS. MAIO:  It leaves Count 178, which is the money

20  laundering conspiracy in which only Mr. Hindmon and Mr.

21  Montgomery are charged.

22          THE COURT:  What about that?

23          MS. MAIO:  We would argue that the same analysis

24  would apply.

25          MR. PIPER:  It does.  I'll concede that.

```
 1              THE COURT:  So, that's 168?

 2              MR. PIPER:  178.

 3              THE COURT:  178.

 4              MS. MAIO:  Yes, sir.

 5              MR. HOBBS:  Last count.

 6              THE COURT:  I'll apply it to those, too.

 7              Is it time to let Mr. Eldridge come back up here?

 8              MR. PIPER:  Well, we were going to argue the good

 9     faith as it applies to the kickbacks, Your Honor.

10              THE COURT:  Do you want to be heard?  Let's -- Mr.

11     Eldridge is the one arguing, why don't --

12              MR. ELDRIDGE:  I'll be happy to be heard, Judge.

13              THE COURT:  Come back.

14              (Brief pause.)

15              MR. ELDRIDGE:  Your Honor, I will start with calling

16     the Court's attention to the illegal remuneration language at

17     Page ID 3984, which is Document 355.

18              THE COURT:  Hold on.  Thirty what?

19              MR. ELDRIDGE:  Page 3984 of Document 355, which is

20     your --

21              THE COURT:  Okay.

22              MR. ELDRIDGE:  -- proposed applicable legal

23     standards.

24              THE COURT:  Okay.

25              MR. ELDRIDGE:  And I'm simply calling the Court's
```

1   attention to the elements that the government must prove

2   concerning --

3           THE COURT:  Say it again.  I'm --

4           MR. ELDRIDGE:  The document number is 355, Judge,

5   that's the Court's initial order --

6           THE COURT:  All right.

7           MR. ELDRIDGE:  -- concerning applicable legal

8   standards.

9           THE COURT:  What is the page ID number?

10          MR. ELDRIDGE:  Page ID is 3984.

11          THE COURT:  Okay.  I got it.  Go ahead.

12          MR. ELDRIDGE:  And the definition of illegal

13  remuneration under the 42, I won't say all of the, under the

14  Title 42 offense.  It says that the government must prove

15  beyond a reasonable doubt that the defendant knowingly and

16  willfully, knowingly and willfully, offered to pay

17  remuneration, et cetera, et cetera, et cetera.  Now, Judge,

18  the inclusion of the term willfully in our view --

19          THE COURT:  Means good faith?

20          MR. ELDRIDGE:  Means that --

21          THE COURT:  Not -- the absence.

22          MR. ELDRIDGE:  -- not acting in good faith.  In

23  fact, we argued in our, Mr. Chatfield's brief, on the

24  sufficiency of the proof as it relates to that offense.  And

25  we cited the definition of willfully, I think, out of the

 1    Fifth Circuit, that talks about a voluntarily, intentional

 2    violation of a known legal duty.  And I'm going to find that

 3    page, Judge.

 4            THE COURT:  In your brief, you mean?

 5            MR. ELDRIDGE:  In our brief, yes.  Thank you.

 6    Forgive me.

 7            THE COURT:  And this is Mr. Chatfield's brief?

 8            MR. ELDRIDGE:  This is Mr. Chatfield's brief, which

 9    is Document 392, Judge.

10            THE COURT:  I got it.

11            MR. ELDRIDGE:  Bear with me.  It is -- of course, I

12    can find everything but that section.  My apologies, Judge.

13            THE COURT:  Hold on.  Try looking at Page 36 of 40,

14    if it's around there.

15            MR. ELDRIDGE:  Very well.

16            THE COURT:  7888.

17            MR. ELDRIDGE:  It is, Judge, ID --

18            THE COURT:  7888, which I've got in front of me.

19            MR. ELDRIDGE:  That's correct, Judge.  And we cited

20    to the Court, I mean, as the Court notes --

21            THE COURT:  I see *Davis*, *Garcia*, and *Starks*.

22            MR. ELDRIDGE:  Yes, Your Honor.

23            THE COURT:  Two from the, two from the Fifth Circuit

24    and one from the Eleventh Circuit.  Right?

25            MR. ELDRIDGE:  Correct.  And it includes the

1  definition of what willfully means in the context of this

2  statute.  And the *Davis* case, if my memory serves correctly,

3  is an illegal remuneration prosecution, so it's lifted

4  straight from the standard applied --

5          THE COURT:  I thought I had just ruled that I'm

6  going to apply it to illegal remuneration.  Did I not?

7          MR. PIPER:  You did not, Your Honor.

8          THE COURT:  Okay.  And does the government contest

9  this?

10          MR. PIPER:  We do, Your Honor.

11          THE COURT:  Okay.  Then I'll -- okay.

12          MR. ELDRIDGE:  So, in essence, that's our argument,

13  Judge, the statute includes the term willfully --

14          THE COURT:  Basically, I mean, the argument is then

15  that the requirement of willfulness necessarily implies an

16  absence of good faith?

17          MR. ELDRIDGE:  Correct, Your Honor.

18          THE COURT:  That is the argument?

19          MR. ELDRIDGE:  That's correct.

20          THE COURT:  Okay.  What about that, Mr. Piper?

21          MR. PIPER:  Your Honor, the Sixth Circuit has stated

22  unequivocally that -- we cite a case in our brief that says on

23  a false statement to a bank, good faith is not applicable

24  there.  I understand what willfulness means is that one had a

25  bad intent or one intended to do this act that violated the

1  law.  Judge, there is intent in everything.  There is an

2  intent in a bank robbery or a carjacking that you wouldn't get

3  a good faith on.

4          And the reason why this is important is because the

5  anti-kickback statute is not a fraud statute.  And we've been

6  saying this for quite some time.  I could go to the pharmacy

7  and I could go to Blue Cross and I could go to the PBM and

8  say, hey, I'm paying a remuneration for somebody who's not an

9  employee to go out and market these creams for Tricare or

10  Medicare or Medicaid.  I could be up front about it.  It is

11  still a violation of the law.  It requires no fraud, no deceit

12  to do this, even though that's not to say we don't have deceit

13  in this case, but we could be completely up front with it and

14  say this is what I'm doing; no lie, no deceit whatsoever, and

15  it's still a violation of the Title 42, 1320 offense.  Good

16  faith and in the case that we cite to the Court -- pardon me

17  for turning my back on Your Honor.

18          THE COURT:  How about finding the case in your

19  briefs.  I've got -- tell me, is it in your initial brief or

20  is it in your reply?

21          MR. PIPER:  Judge, for me, it's going to be in the

22  government's proposed standards --

23          THE COURT:  Okay.

24          MR. PIPER:  -- regarding the elements.

25          THE COURT:  I'm sorry.

```
 1          MR. PIPER:  And that's going to be on Page 61 --

 2          THE COURT:  Okay.  Sixty-one.

 3          MR. PIPER:  -- 56.

 4          THE COURT:  6156.  Hold on.  I got it.  Okay.  Show

 5  me --

 6          MR. PIPER:  And if you scroll down to 6157, we cite

 7  Wilhoite, it's a 2017 U. S. Appellate Lexis 28003, it's a case

 8  that Mr. Clark found for me, Judge, because he uses Lexis and

 9  I use Westlaw.  But making a false statement to the bank,

10  district court should not have given a good faith instruction

11  for that violation noting that the pattern instructions

12  limited the good faith instruction to mail fraud, wire fraud,

13  bank fraud, and health care fraud only.

14          The elements of a kickback count, the willfulness

15  and Starks is a case that the defendants rely upon frequently,

16  and it says that the word willfully means the act was

17  committed voluntarily and purposely with the specific intent

18  to do something the law forbids, that is, with a bad purpose

19  either to disobey or disregard the law.

20          Now, the same thing could be said of a false

21  statement to a bank, Your Honor.  Any number of crimes that

22  are so-called white collar crimes, but the Sixth Circuit

23  pattern instructions have stated that they do not.  And I

24  think pattern instruction 10.04 is the, is the instruction on

25  the good faith that shows --
```

```
 1              THE COURT:  Mail, wire, and bank fraud only.  It
 2    does not articulate a general good faith defense.  Okay.
 3    That's what -- I'm reading from your brief.
 4              MR. PIPER:  Yes, sir.  And I believe this is the
 5    reason why.  And if the Court thinks about it, the
 6    anti-kickback statute is not necessarily a fraud statute.  It
 7    is not a fraud statute.
 8              THE COURT:  Yeah.
 9              MR. PIPER:  Were it, it would be in Title 18 around
10    the 1300 series.
11              THE COURT:  Let me stop you right there --
12              MR. PIPER:  Okay.
13              THE COURT:  -- Mr. Piper.  At this point, Mr.
14    Eldridge, Mr. Piper has, I believe, convinced me that the law
15    in the Sixth Circuit may be different from the law in the
16    Fifth and the Eleventh Circuit on this point.  You know, he
17    points to the Wilhoite case, and the language of the Sixth
18    Circuit pattern instructions.  I mean, tell me, tell me why
19    you think that Mr. Piper doesn't have the better of this
20    argument.
21              MR. ELDRIDGE:  Your Honor, I think that I heard Mr.
22    Piper correctly in that we -- there isn't a dispute as to how
23    willfully should be defined because he recited the same
24    definition of willfully to you that I did in my papers.
25              THE COURT:  But, apparently -- yeah, I get that.
```

1    And I get that's your argument.  But it seems to me that

2    reasons, for reasons that aren't as abundantly clear as I wish

3    they were, in *Wilhoite*, the Sixth Circuit seemed to suggest,

4    no, you know, we're going to apply it to the enumerated

5    offenses that are listed in our pattern instructions.  Now,

6    having said that, the government has already conceded that it

7    applies to some non-enumerated offenses, but they're not

8    conceding anti-kickback.

9         MR. ELDRIDGE:  And there is no pattern for the

10   remuneration statute, Judge.

11        THE COURT:  Well, they've conceded that, too.

12        MR. ELDRIDGE:  So --

13        THE COURT:  I don't know why the government's

14   drawing this distinction at least, but I do see that

15   apparently the Sixth Circuit seems to be sort of headed that

16   way, not right on all fours, but -- I tell you what --

17        MR. PIPER:  Your Honor, please, pardon me for

18   interrupting the Court, maybe we should have sat on this issue

19   for a second and let Mr. Clark and me discuss it.  I don't

20   want to make a huge deal out of it.

21        THE COURT:  Well, I mean -- let me just say this.

22   I'm about to rule in your favor, Mr. Piper, but I think that

23   everybody who's a trial lawyer knows, be careful what you ask

24   for.

25        MR. PIPER:  Absolutely.  I think that was also --

          1              THE COURT:  If the government wants to concede this,

          2    I'm not sure that's not the best course of action here.

          3              MR. PIPER:  Judge, I would invite the Court's

          4    attention to a case called *U. S. versus Vernon*.  And I

          5    apologize, Your Honor, that I don't have this in any of my

          6    briefs, in our briefs.  And it's an Eleventh Circuit case, a

          7    lot of anti-kickback litigation is from Florida, *U. S. versus*

          8    *Vernon* is 723 F.3d 1234.  And it's a lengthy case.  And the

          9    pinpoint cite I'm discussing is 1273 through 74.  May we table

         10    this, Judge, and let Mr. Clark and I discuss this --

         11              THE COURT:  Yeah.

         12              MR. PIPER:  -- because the Court is right --

         13              THE COURT:  Because I'll tell you, I'm leaning

         14    ruling in your favor, however, again, be careful what you ask

         15    for.  This is exactly the sort of stuff that can get a

         16    conviction, which is all potentiality right now, sent back,

         17    you know.  Is it really worth it, you know.  So, okay, I'm

         18    going to reserve, but let's clean up the record.  As I reserve

         19    rulings on stuff, what I'm really trying to do is make as

         20    clear a record as I can.  Okay.

         21              All right.  As to good faith, is there anything else

         22    that you want to argue, Mr. Eldridge?

         23              MR. ELDRIDGE:  No, Your Honor.

         24              MR. PIPER:  Judge, one more thing.  I think that the

         25    ag ID theft, of course, the problem is that the underlying

1    crimes must have been committed, again, for the ag identity

2    theft charges, and that would be between from the conspiracy

3    to the mail to the wire to the health care fraud, whatever.

4    So, our argument would be the same that if good faith applies

5    to the underlying offense, it is, therefore, derivative on the

6    ag ID theft, much as it would be on the money laundering.

7              THE COURT:  Well, let's get to that later as well.

8    Now, I mean, I'm glad you have brought up the aggravated

9    identification theft counts, because let me fill you in,

10   counsel, I've been doing throughout this trial.  In going

11   through these briefs and thinking about the record, there are

12   a very small handful, I believe, two or three at the most

13   disputes among the parties as to what I will refer to as basic

14   facts, did it happen or did it not happen, almost this entire

15   case as to almost every count boils down to a determination of

16   how I interpret the undisputed evidence, and, particularly,

17   how I interpret and make reasonable inferences regarding

18   particular defendants' conduct as it might relate to their

19   motive.  Okay.  That's how I boil this case down.

20             But let's go ahead.  Okay.  You've won everything on

21   good faith up to now, Mr. Eldridge, with the possible

22   exception of anti-kickback and aggravated identity theft.  And

23   the government is going to confer and decide whether they want

24   to concede or not.

25             MR. ELDRIDGE:  That's correct, Your Honor.

```
 1              THE COURT:  Mr. Schwartz, what --

 2              MR. SCHWARTZ:  Just briefly after the government

 3    confers and decides what they want to do, if they still want

 4    to move forward on the remuneration issues, I would appreciate

 5    to just briefly be heard on behalf of Mr. Wilkerson.

 6              THE COURT:  They've conceded good faith, which is

 7    the only thing as to illegal remuneration.

 8              MR. SCHWARTZ:  Okay.  I wasn't aware of that.  I

 9    thought they were going to discuss --

10              MR. PIPER:  We've asked to confer on that, Judge,

11    and table it for the time being when we --

12              THE COURT:  I thought we were talking about the

13    anti-kickback statute?

14              MR. PIPER:  We are.  I'm sorry.

15              THE COURT:  So, three things, anti-kickback, illegal

16    remuneration, and aggravated identity theft?

17              MR. PIPER:  I'm identifying AKS, the anti-kickback,

18    as the same as illegal remuneration.

19              THE COURT:  Okay.  Thank you for clarifying that.

20              MR. PIPER:  I'm identifying those as the same.  I'd

21    ask for --

22              THE COURT:  Okay.  I'm reserving ruling on those.

23              MR. PIPER:  Whether good faith applies to the

24    anti-kickback or illegal remuneration statutes.

25              THE COURT:  Okay.  And aggravated identity theft.
```

1          MR. PIPER:  Well, Judge, I would concede the same

2     point that we made for money laundering, that the Court will

3     have to review the underlying -- it's a predicate offense for

4     ag identity theft, which will be either wire, mail, or health

5     care or conspiracy --

6          THE COURT:  So, illegal remuneration and

7     anti-kickback are the two things?

8          MR. PIPER:  It's the same thing, Judge, whether the

9     good faith instruction applies to the AKS/illegal

10    remuneration.

11         THE COURT:  Okay.  All right.  Now, with that, and

12    we're going to have to get back to that later, Mr. Eldridge,

13    are we ready to move on to the second point that you're --

14    hold on.  I'm looking.  Let me go back.  I think this is the

15    best organized way.  I've considered your arguments on good

16    faith instruction as to everything and I've had to reserve a

17    couple of things on that.  Are we ready to move to what you

18    refer to as material omission?

19         MR. ELDRIDGE:  Your Honor, with one very quick

20    statement that I agree with Mr. Piper as it relates to the

21    application of the good faith defense on the aggravated

22    identity theft issue.

23         THE COURT:  Okay.

24         MR. ELDRIDGE:  That it applies to the underlying

25    offenses, and is, therefore, derivatively applicable to the ag

1   identity theft.

2          THE COURT:  All right.  Thank you.  Let's move to

3   material omissions.

4          MR. ELDRIDGE:  That's right, Your Honor.

5          THE COURT:  Okay.

6          MR. ELDRIDGE:  Your Honor, in the context of this

7   case --

8          THE COURT:  Yeah.

9          MR. ELDRIDGE:  -- this requested instruction is

10  critical.  It is critical to the defense of these citizens.

11         THE COURT:  I can see what you're saying, because it

12  relates to whether there was an affirmative duty.

13         MR. ELDRIDGE:  Yeah.

14         THE COURT:  Now --

15         MR. ELDRIDGE:  And we have simply said that there is

16  authority in the Sixth Circuit.  We cited *Maddox*.  It says

17  what it, what we're quoting, where one says nothing but has a

18  duty to speak.  And in *Maddox*, *Maddox* was a case dealing with

19  a tax obligation where there was a specific request to submit

20  information.  There was a legal duty to submit information

21  that is not here.  It's not applicable in this case.  But

22  *Maddox* says you've got to have a duty to disclose before there

23  can be any material omission or concealment.  And we've

24  submitted the Third Circuit's standard in that instruction.

25  And it talks about legal, professional, or contractual duty to

1  make such disclosure. And that you knew, and that the

2  defendant knew that there was an obligation to make a

3  disclosure.

4      THE COURT: I agree that this is a huge issue in the

5  case and maybe goes to practically the whole case, but here --

6  well, I'm going to wait and let Mr. Piper to make his

7  argument. Let me characterize what I perceive is the parties'

8  arguments. And, again, all the defendants' arguments are a

9  little bit different. But the government is saying that the

10  conspiracy, you know, can be discerned from all, from all of

11  the facts and circumstances, and, particularly, as the

12  government's arguing for me to interpret the defendants'

13  motive as to this whole thing, the whole conspiracy. Some of

14  the individual defendants, and I think that Mr. Wilkerson has

15  made it most pointedly in his brief, you know, Judge, don't

16  look at it that way, look at all, each and every thing that

17  Mr. Wilkerson did separately, and this is my term, not Mr.

18  Wilkerson's, in isolation. And once you look at it that way,

19  every single thing he did, there is at least a plausible

20  argument, well, this isn't illegal, this isn't illegal, this

21  isn't illegal, you know.

22      And so, the question becomes, okay, how am I to look

23  at it. Am I to look at all of the facts in combination or am

24  I to break it down in numerous silos as Mr. Wilkerson, and

25  perhaps your client, also, and perhaps to some extent some of

the defendants, are urging me to do.  So, that's a huge

overarching question in the case.  And I certainly agree that

this duty issue -- here's the way I'm framing this.  You're

saying, okay, wow, the Third Circuit has captured it

perfectly.  They are insisting that there is an affirmative

duty to disclose each and every thing, you know, that they

may, that may constitute.  I think that the government's

position is, Judge, there is always a duty in the law not to

defraud someone, and, therefore, just the whole concept of

duty, you know, the whole, the whole concept of fraud is

wrapped up in duty.

           I mean, let me put it this way.  Something that's

gotten a lot of press in a completely different context, the

government is just sort of saying that the crime of fraud

carries with it a duty to disclose almost as a matter of

common law, if there is, but we've been reminded recently in a

completely different concept, there is no federal common law,

criminal common law.  Supreme Court abolished it in, I

believe, see, I mean, I've been watching TV, in like 1810 or

something like that.  Is that a fair way for me to look at

this?

           MR. ELDRIDGE:  Well, we would direct the Court's

attention back to the actual statutes which is how Congress

has defined this crime.

           THE COURT:  And the Supreme Court has held --

         MR. ELDRIDGE:  It requires a material

misrepresentation or a concealment of material fact and intent

to defraud.  Our position is that the Sixth Circuit in *Maddox*

said you can't be convicted, that you have to have a duty to

speak, a duty to disclose.  As the Court will remember from

the testimony in this case, the representatives of the

pharmacy benefit managers, who were responsible for processing

these claims, essentially took the position that these

individuals had an affirmative duty to disclose their

existence to the pharmacy benefit managers and disclose how

they were doing business when there was not even a mechanism

to do so.  And so, if we can't -- so, if you go with what the

statute says and how the Court has written the elements, then

the notion of concealment, because that's the crux of the

government's argument on concealment, is that you're

concealing everything.  You're concealing the whole operation

of this group of individuals marketing these creams.  And if

you don't have a duty to disclose it, then you can't be

prosecuted for concealing it.

         THE COURT:  Okay.  Let me hear from Mr. Piper.

What -- how -- I've tried to sort of, I've struggled to

articulate it, Mr. Piper.  How would you state the

government's position?

         MR. PIPER:  First, nobody from the PBM ever said

that any of these defendants had a duty to disclose anything.

1   Never.  Nobody said that.  Kriplean was asked on

2   cross-examination about Chatfield picking up the phone to call

3   the PBM and Kriplean's smart aleck response was, well, nothing

4   prevented him from doing that.  The defendant has bootstrapped

5   that into this idea that we are saying they had a duty to

6   disclose.  That's not true.  *Maddox* and the cases like it,

7   there is another case that talks about export/import

8   enforcement as well, dealt with their not disclosing these

9   cigarettes to Customs authorities and that was the concealment

10  or the omission.

11          What we argue, and it took me a second to figure

12  this out, how clever this argument is by the defendants.  It

13  took me a second to figure it out.  This is not concealment.

14  Michael Chatfield and Wayne Wilkerson paying Ryan McGowan

15  $2,000 for the money orders for Willow Pharmacy in June of

16  2014, that's not concealment, Judge.  That's a material

17  misrepresentation.  That is an overt fraudulent act.  That is

18  a false and fraudulent pretense.  And if that's not true, then

19  every defendant every time could say this, oh, I had no duty

20  to the one uplinked from my pharmacy.  And, by the way, the

21  pharmacy would have a duty to report.  The pharmacy would have

22  a duty to report to the PBM.  So, now, the defendants want to

23  say nothing to see here, we didn't have a duty.  We've made

24  35 -- we've billed 35 million dollars, but we didn't have a

25  duty to report that we were paying copays, that we were paying

1  inducements.  That's not a concealment, Judge.  That's a

2  material misrepresentation and an affirmative act of fraud.

3  And --

4              THE COURT:  All right.  Let -- okay.  Go ahead.

5              MR. PIPER:  Okay.

6              THE COURT:  Put it on the record.

7              MR. PIPER:  And my point is this.  Is that, yes,

8  there are some things that were probably concealments that the

9  defendants could rely upon, but these are material

10 misrepresentations, affirmative acts that the defendants are

11 committing.  And as the Court noted, in health care fraud,

12 especially, the substantive counts, not just the conspiracy,

13 the goal of the health care fraud is, obviously, the mark is

14 the insurance company.  Let's defraud a health care benefits

15 provider is what the statute says.

16             The point being is that even if the Court decides

17 that some of these are omissions and concealments, certainly,

18 and I think that the defendants have conceded this, that the

19 pharmacies would have an obligation.  Every count from two

20 through 140 has an aiding and abetting charge attached to it.

21 And so, therefore, to think that the pharmacies can just say,

22 well, we don't have an obligation either, the pharmacies

23 certainly would have, but these would only be for omissions

24 and concealments under *Maddox*.  Again, Judge, it took me a

25 second to figure this out as to why we're not just discussing

1  omissions and concealments here.  We're talking about material

2  misrepresentations which takes it out of the realm of the

3  *Maddox* language.  We're talking about affirmative acts by the

4  defendants that they have done.

5          THE COURT:  And what you're saying -- let me make

6  sure I understand your argument.  You're saying that the

7  affirmative acts are captured in most, if not all of the other

8  counts of the indictment?

9          MR. PIPER:  Yes, sir.  And, Your Honor, Your Honor

10  has always said, and honestly were I charging this case today,

11  were I presenting it to the grand jury today, I probably would

12  have done it a little different.

13          THE COURT:  Well, but --

14          MR. PIPER:  Your Honor has always said the

15  conspiracy is the overarching scheme and whether you have

16  joined in it.  But I would respectfully submit to the Court

17  that even on a scheme to defraud, that somebody within the

18  scheme is doing it.  And what a scheme to defraud requires is

19  that the defendants participated in it, not that they created

20  it, not that they devised it, it's that they knowingly

21  participated in.  I will say, Judge, that does not apply to

22  health care fraud.

23          THE COURT:  Okay.

24          MR. ELDRIDGE:  May I respond very briefly?

25          THE COURT:  Yeah.  Go ahead and then I'm going to

1   make a ruling.

2           MR. ELDRIDGE:  Your Honor, I just want to point out

3   that Mr. Piper's argument is an argument, essentially, an

4   argument on the facts and the law applied to the facts.  It's

5   not an argument on what the appropriate legal standard --

6           THE COURT:  I think I probably agree with you.  And

7   let me say this.  That's why I'm not going to rule on this

8   objection because I do think that it, that, certainly, there

9   are some circumstances where the law has identified an

10  affirmative legal obligation to disclose and so forth.  There

11  is not much of that here in this case.  However, having said

12  that, I do believe that a trier of fact, me, consideration of

13  whether a fraud has been committed requires me to look at all

14  of the facts and circumstances and reasonable inferences that

15  can be drawn from the facts and circumstances and that it is

16  possible to commit a fraud through a combination of overt

17  affirmative acts and omissions.  Okay.  And, therefore, I

18  don't know, that's what I'm saying right now, that's the way

19  that I'm going to look at this case.  I am not necessarily

20  going to say that there has got to be a duty to, an

21  affirmative duty recognized by law to disclose as to each,

22  each individual instance.  There can be.  I'm going to look at

23  this globally.  And I don't know how that plays out, but I'm

24  not -- I hear the defendants making that argument.  This is at

25  best a mixed question of law and fact.  And what my job is is

```
 1   to figure out whether a fraud has been committed.  Okay?

 2            MR. ELDRIDGE:  May I just state something?

 3            THE COURT:  Yeah.  Go ahead and make the record,

 4   because that's -- the Sixth Circuit is going to read this if

 5   there is a conviction, so.

 6            MR. ELDRIDGE:  For the record, just --

 7            THE COURT:  Right.

 8            MR. ELDRIDGE:  -- respectfully, I don't want to

 9   argue with the Court, but for the record, Judge, we have

10   requested this applicable legal standard at Page 4007 of

11   Document 358 as it relates to --

12            THE COURT:  And I guess what I'm saying, I'm going

13   to apply that in what I think is a common sense matter,

14   manner, that is less strict than what I think that you're

15   suggesting.  And so, in that case, I presume that you are

16   vehemently objecting to that.  Right?

17            MR. ELDRIDGE:  We are objecting to the omission of

18   the language requested --

19            THE COURT:  Okay.

20            MR. ELDRIDGE:  -- from the applicable legal

21   standards to be applied to this case.

22            THE COURT:  Your objection is noted.

23            MR. ELDRIDGE:  And I assume everyone else joins in

24   that.

25            THE COURT:  Yeah.  I assume all of the defendants
```

1   are objecting to that.  Right?  Okay.  Thanks.  Okay.

2            Okay.  Are we ready to move to joining a conspiracy

3   then, Mr. Eldridge?

4            MR. ELDRIDGE:  We are, Judge.  I don't even know if

5   --

6            THE COURT:  If there is no dispute, let's, you know,

7   I don't know.  Mr. Piper, I'm looking at Page 3 of 5 of

8   Document 358.

9            MR. PIPER:  I have 4007 as the page ID, Your Honor.

10           THE COURT:  Yeah, 4007, that's correct, continuing

11  over to 4008.  Does the government object or not object to me

12  applying that standard?

13           MR. PIPER:  I think that's the pattern instruction,

14  Judge.

15           MR. ELDRIDGE:  It is.

16           MR. PIPER:  No.

17           THE COURT:  So, no objection from the government?

18           MR. PIPER:  No.

19           THE COURT:  I will apply that.

20           Okay.  Now what we've just done, Mr. Eldridge, is go

21  through the three things; you won one and three.  You might

22  say that you lost two and you've objected, but I don't know

23  how to put it sitting here today any more clearly.  And you

24  can respond to this.  I do think there has to be a duty, but

25  the duty may be implicit in the entire concept of fraud.  I'll

put it that way.  Okay.  And you and all of the defendants are

vehemently objecting to that.  Right?

MR. ELDRIDGE:  That's correct, Your Honor.

THE COURT:  Okay.  Yeah.  Okay.

All right.  What else can we -- where else can we

turn our attention now while the government is still thinking

about --

MR. PIPER:  I'm still chewing, Judge.  May we take a

brief recess and let Mr. Clark and me discuss --

THE COURT:  Yeah.  Why don't we take a brief recess.

And let's -- if anybody else wants to put anything else on the

record, particularly with regard to my ruling on what's

referred to as a material omission, because that's a biggie,

as I say, that's pretty much the whole case, in my mind.

Okay.  Let's take a brief recess.

(Short recess.)

THE COURT:  Okay.  Mr. Piper, I think that the

question on the table is whether the government will concede

whether good faith is a defense to -- the defendant's good

faith is a defense to the government's allegations with

respect to the anti-kickback?

MR. PIPER:  Counts 135 through 140, Your Honor, the

AKS or the illegal remuneration statutes.

THE COURT:  What's the government position?

MR. PIPER:  Well, Your Honor, this has been a

```
 1   difficult decision for us.  We believe that the *Wilhoite* case
 2   is on point for us.  And I would also invite the Court's
 3   attention -- we're going to concede it.  But having said that,
 4   Your Honor --
 5            THE COURT:  Okay.
 6            MR. PIPER:  -- I would invite the Court's attention
 7   to Title 42, Section 1320(a)(7)(H).
 8            THE COURT:  Tell me what it says.
 9            MR. PIPER:  It says, actual knowledge or specific
10   intent not required.  With respect -- this is in the statute,
11   the kickback, anti-kickback statute, with respect to
12   violations of this section, a person need not have actual
13   knowledge of this section or specific intent to commit a
14   violation of this section.  Now, these are double first
15   cousins to each other, the good faith instruction is not
16   necessarily right on point, but the part of the mens rea for
17   the anti-kickback statute is contained within the statute
18   itself.  And that is Paragraph H.  And I can submit that to
19   the Court if the Court likes.  Mr. Clark and I actually found
20   that recently.  And it's not in our briefing, but it is, we
21   think it's an important part of the mens rea, which is
22   obviously an issue here, the defendants have made it an issue
23   with respect to, as they should, with respect to the AKS, Your
24   Honor.
25            THE COURT:  Okay.
```

1          MR. PIPER:  So, we will concede.  And part of our

2    concession is, Judge, that we believe that we can defeat with

3    proof.  The burden is on the government to defeat good faith.

4    The defendants need never prove it is the jury instruction.

5          THE COURT:  Yeah.

6          MR. PIPER:  But we believe that we have proof that

7    we can offer to the Court.

8          THE COURT:  Okay.  But having said that, the

9    government concedes that the Court is free to consider the

10   defendant's good faith as a defense to Counts --

11         MR. PIPER:  Virtually every count in the indictment,

12   Your Honor.

13         THE COURT:  Okay.  All right.  That concession is on

14   the table.

15         All right.  Mr. Piper, you and Mr. Eldridge come

16   back, both come back to the podium and let me make a statement

17   because this is what's most on my mind.  And we've got to make

18   as thorough a record as we possibly can and my ruling --

19   here's what I say.  As to the Third Circuit's pattern

20   instruction 618.1341, which is on Page 3 of 5 of the

21   defendant's brief, Page ID number 4007, let me just read it,

22   the failure to disclose information may constitute a

23   fraudulent misrepresentation if the defendant was under a

24   legal, professional, or contractual duty to make such

25   disclosure, the defendant actually knew such disclosure might

1  ought to be made and the defendant failed to make such

2  disclosure with the intent to defraud.

3          Here's what I'd say.  Here's what I would say.  It's

4  difficult for me to say whether I'm going to apply this

5  standard or not, but I will say this.  I believe that a duty

6  is inherently part of the concept of fraud, just inherently in

7  there.  So, yeah, I guess, one way to put it, there is a legal

8  duty to make a disclosure that is inherent in the concept of

9  fraud.  Now, the reason -- I'll let each of you all -- in

10  proper, in proper, in a proper case, looking at the totality

11  of the facts and circumstances.

12          All right.  I want each of you all to put on the

13  record, because this is really important.  Mr. Piper, is there

14  anything else you want to put on the record in that regard?

15          MR. PIPER:  Just that the *Maddox* case, Your Honor,

16  that defendants have relied heavily upon deals with

17  concealment or omission.  It's our position that not

18  everything that the defendants did was, can be classified as a

19  concealment or omission, number one.

20          Number two, that the defendants are charged with

21  aiding and abetting.  There is a scheme.  The Court has

22  already addressed throughout the trial the concept of a

23  conspiracy and how that's different and the government agrees.

24  But even in a scheme to defraud, the defendants merely, need

25  merely participate.  And it's our position that the pharmacies

1  at least would have had a duty to the PBMs to say, we're

2  paying people for a study that doesn't exist or we're paying

3  their copays, something like that.

4          THE COURT:  All right.

5          MR. PIPER:  Judge, and this leads to the third point

6  is the problem is that, for example, when Mr. Wilkerson sends

7  out the June 13th and June 17th, 2014 is the one that comes to

8  mind, it's basically that big commission from Willow, I think

9  it's 2.9 million for Mr. Wilkerson, Mr. Chatfield received

10  700,000, Ms. Nicholson, 130.  We charged those as substantive

11  wire fraud counts.  Now, there is nothing inherently illegal

12  about those statements, those wires, and we wouldn't know, for

13  example, who the defendant would have had a duty to reveal

14  that to.  It still furthered a scheme to defraud.

15          THE COURT:  Okay.  Let me ask you this.  And, I

16  mean, I'm, you know, not trying to belabor this, but, I mean,

17  this sort of has a now you see it, now you don't quality to

18  it.  Does the government agree or disagree with my statement

19  that I believe that the concept of a duty to disclose can be

20  and actually usually is inherent in the legal concept of a

21  fraud?

22          MR. PIPER:  Your Honor, my concern when reading the

23  *Maddox* case is that the "duty to disclose" was somebody that

24  was hiding something, concealing something, omitting something

25  from a Customs agent, that they would have been asked do you

```
 1   have anything to declare.

 2            THE COURT:  Okay.  So, I'm --

 3            MR. PIPER:  I'm uncomfortable --

 4            THE COURT:  Yeah.  If you're uncomfortable, because

 5   I need to say what I'm thinking on the record.  And what I

 6   guess I'm really saying is that the duty that is inherent in

 7   fraud does not need to be established as a separate

 8   independent matter external to the fraud itself, that a duty

 9   is internal and inherent as I'm using the word to the fraud.

10            MR. PIPER:  I think that's not what the Maddox case

11   says, Your Honor.  The Maddox case is a specific narrow set of

12   facts, and that -- and I haven't pondered the Court's

13   pronouncement, which is intriguing to Mr. Clark and me, Judge,

14   that there is an inherent duty to disclose things, that the

15   nature of fraud is such that you have a duty, basically, not

16   to do it --

17            THE COURT:  Yeah.

18            MR. PIPER:  -- and then, and I have --

19            THE COURT:  And that may, given, given the

20   particular and peculiar facts and circumstances of any case,

21   may depend, may depend -- and, again, that's what I just said,

22   can be viewed as disquieting to the extent it means, well, I

23   can't define it, but I know it when I see it, but --

24            MR. PIPER:  Potter Stewart, Judge.

25            THE COURT:  I think that is in many ways the essence
```

1   of this concept that we call fraud.  Certainly, in a civil

2   context, and I believe even in a criminal context.

3         MR. PIPER:  And, Judge, my concern is I think that

4   the legal duty that *Maddox* and the Sixth Circuit addressed is

5   a narrower band than what the Court is pronouncing here today.

6   I think that the duty they're talking about is that it's an

7   affirmative written, legal duty to disclose something, to

8   declare something, the cigarettes, the tax.  There is another

9   case --

10        THE COURT:  That's certainly an easier case.

11        MR. PIPER:  Sure.  Sure it is.  And that's why I

12  say, Judge, and to go back to my first point, there is not --

13  it's not just omissions and concealments here.  There are

14  affirmative misrepresentations being made.

15        THE COURT:  But the government is urging me to look

16  at it all in its totality and not --

17        MR. PIPER:  Yes, sir.

18        THE COURT:  -- and not in silos?

19        MR. PIPER:  Yes.  That's correct.

20        THE COURT:  All right.  Mr. Eldridge, you put on the

21  record, I think it's important you put on the record whatever

22  you --

23        MR. ELDRIDGE:  Your Honor, the Court has already

24  noted that there is no federal common law --

25        THE COURT:  That's correct.  I believe, I don't

1　think there is any dispute as to that.  I mean, I think the

2　Supreme Court declared that in, I believe, it was 1810.

3　　　　　MR. ELDRIDGE:  And we would respectfully disagree

4　with the proposition that the duty that the Sixth Circuit has

5　discussed arises from some inherent, respectfully,

6　amorphous --

7　　　　　THE COURT:  In other words --

8　　　　　MR. ELDRIDGE:  -- standard.

9　　　　　THE COURT:  In other words, your clients were not

10　sufficiently put on notice that what they were doing was

11　illegal?

12　　　　　MR. ELDRIDGE:  Perfect.  That's exactly right.

13　That's part of the duty is notice.

14　　　　　THE COURT:  And I guess what I'm saying is that I

15　think that based upon the totality of facts and circumstances

16　of this case, they could have been put on notice.  I'm not

17　saying they had, I'll decide that later, but I think that they

18　could have been on notice.  So, I want to give each defense

19　counsel an opportunity to say anything they want to say on the

20　record.

21　　　　　MR. ELDRIDGE:  And --

22　　　　　THE COURT:  You finish.

23　　　　　MR. ELDRIDGE:  Just not to belabor it, but our

24　position on the applicability of this legal standard as we

25　have requested has not changed.

```
 1              THE COURT:  Okay.  Sounds good.  Does any other
 2    defense counsel want to be heard on this matter?
 3              All right.  Seeing none, then the record will stand
 4    as it is.  Okay.
 5              Counsel, okay.  What else, what else do we need to
 6    take up in the realm of objections to the legal standards that
 7    the Court will apply here, which will basically be the
 8    standards set forth in the Court's Documents 355, as well as
 9    the rulings that I've made here thus far this morning?
10              Anything else anybody else want to put any objection
11    on the record.  Mr. Piper?
12              (Brief pause.)
13              MR. PIPER:  I'm sorry.  Agent Kriplean has once
14    again corrected me, Judge.
15              THE COURT:  All right.  Tell me what.
16              MR. PIPER:  Know-it-all agent, Judge.
17              THE COURT:  Where do you want to look?
18              MR. PIPER:  Judge, I just want to correct the Court,
19    correct the government's previous misrepresentation to the
20    Court that the anti-kickback statute counts are as Agent
21    Kriplean just noted for me are Counts 141 through 167.  And
22    there are two of them that were, the government moved to
23    dismiss.  He's right about this, Judge.  I was trying to be
24    flippant.
25              THE COURT:  Thank you for clarifying that.
```

1          MR. PIPER:  I said 135 through 140 --

2          THE COURT:  In my mind, I am considering the

3     defendant's good faith or potential good faith as to each and

4     every count in the indictment.

5          MR. PIPER:  Correct.

6          THE COURT:  Okay.  All right.  Now, I know Mr.

7     Wilkerson wants to or, I think, his counsel wants to address a

8     particular matter.  Any other -- I don't want to necessarily

9     go out of order.  Does anybody else want to be heard on legal

10    standards today?  Mr. Schwartz.

11         MR. SCHWARTZ:  I believe that the government has

12    acknowledged that the issue that we were going to discuss, so.

13         THE COURT:  Okay.

14         MR. SCHWARTZ:  That concession was made by the

15    government, so.

16         THE COURT:  Let me give it time to sink in.  Any --

17    what I'm about to do is do the functional equivalent of

18    closing the functional equivalent of a charge conference

19    pursuant to Federal Rule of Criminal Procedure, I believe it's

20    30, if I'm not mistaken.  In other words, I want to make clear

21    that the parties know what legal standards I'm going to apply.

22         Mr. Schwartz?

23         MR. SCHWARTZ:  Judge, there seems to be a little --

24         THE COURT:  Why don't you come to the podium, so I

25    can hear you.  Counsel, if anybody is dissatisfied with what

1    the record is going to show here, please, again, speak now or

2    forever hold your peace.

3           (Brief pause.)

4           MR. PIPER:  I'm sorry, Judge.

5           THE COURT:  Take your time.

6           (Brief pause.)

7           MR. PIPER:  Your Honor, what Mr. Schwartz has

8    invited my attention to is Document 373.  And we mentioned

9    this earlier, it's an Eighth Circuit standard for the payment

10   of illegal remuneration.

11          THE COURT:  Let's see.  I'm looking at the brief.

12   It begins at Page ID No. 6165.

13          MR. PIPER:  Correct.

14          THE COURT:  Tell me -- does the government agree or

15   disagree?

16          MR. PIPER:  I don't see the -- I don't see the

17   difference between this and what the Court has already -- and,

18   actually, I talked to Mr. Thomas briefly about it just

19   unfortunately too briefly.  I don't see the difference.  I

20   don't know that the Court should change its previous

21   recitation of the legal standards for the anti-kickback

22   statutes, the illegal remuneration.  I don't know --

23          THE COURT:  Let's talk about when you say the

24   Court's standard.  Let me look and see what the Court said.

25   Let's see.  Point it to me in Document 355.

```
 1            MR. PIPER:  Hold on one second, Judge.  It is going
 2    to be -- and, Judge, I don't have the file --
 3            THE COURT:  Hold on.  Hold on.  Well, shoot.
 4            MR. PIPER:  It's going to be Page 3 of 5.
 5            THE COURT:  Okay.
 6            MR. PIPER:  Or as far as the page ID number, it's
 7    going to be 3984.
 8            THE COURT:  I got it.  Okay.  And we're talking
 9    about for Counts 141 through 156?
10            MR. PIPER:  And then, obviously, Judge, for 157
11    through 167 as well.
12            THE COURT:  Okay.
13            MR. PIPER:  It's two sides of the same coin.
14            THE COURT:  Okay.  Yeah.  Okay.  Now, that's the
15    standard I'm going to apply.  And do you want some time -- do
16    you want to take another recess so you and Mr. Wilkerson --
17    here's what I'm comparing.  Here's what I'm going to compare.
18    I'm going to compare the standards that I've set forth in Page
19    ID 3984 and 3985 to the standard that Mr. Wilkerson is
20    suggesting in Pages 6165 through 6167, I guess.  And I don't
21    know what the differences are either, but I want you to sort
22    that out so you can come back and make a record.
23            Okay.  Let's take another brief recess.  And, by the
24    way, after we get this concluded, I need to hear about what
25    your thoughts are about making arguments to me, so.
```

1          (Short recess.)

2          THE COURT:  All right.  I think the question on the

3    table is whether or not the Court's proposed standards as set

4    forth for Counts 141 through 156 but not 142 and Counts 157

5    through 167 but not 160 as set forth on Page ID No. 3984,

6    3985, can be applied as written, or whether there should be

7    some modification based upon Mr. Wilkerson's motion to modify,

8    which is Document 373.  It starts on Page ID 6165.

9          Mr. Piper, do you want to speak to that?

10         MR. PIPER:  Yes, Your Honor.  I looked at both the

11   *Yielding* case and the *Jain*, J-A-I-N, case, that Mr. Wilkerson

12   cites.

13         THE COURT:  Yeah.

14         MR. PIPER:  The *Yielding* case apparently deals with

15   whether it was appropriate to instruct the jury whether it was

16   primarily, the kickbacks were primarily paid for the purposes

17   of getting money from a federal health care program or

18   substantially.  And the district court went with primarily and

19   the Eighth Circuit approved that instruction.  I don't see

20   anything in *Jain*, J-A-I-N, Judge, that says, that uses the

21   word primarily.  It just talks about the jury instruction and

22   willfulness and mens rea.  I don't see -- other than the word

23   primarily in that Eighth Circuit jury charge that Mr.

24   Wilkerson proposes through Mr. Thomas and Mr. Schwartz, I

25   don't see any difference in that, as to what the Court has

1    proposed.

2         And let me go ahead and make an apology to Your

3    Honor.  The Court was the one that gave us the *Vernon* case.

4    It's that Eleventh Circuit case from 2013 that I cited

5    earlier.  And it's actually Mr. Clark, I think, was reading it

6    yesterday.  He said, hey, look at this.  And it was in the

7    Court's proposed instructions.  And, in other words, tracking

8    the language of the statute which the Court has done.  And we

9    believe that the statute is tracked in the Court's instruction

10   and it's appropriate.  And I don't see any real difference

11   between what the Eighth Circuit has said, although, I don't

12   know that the Court is required to include the word primarily.

13   In other words, for us to have a burden to say that Mr.

14   Wilkerson or anybody else, the reason that they were primarily

15   doing this was to get a kickback.  I don't believe that's what

16   the law says.  Now, I'm not sure that that fits the proof in

17   this case anyway.  I don't believe it's a real big issue.  But

18   I do believe that the Court's jury instruction as proposed to

19   the parties in the Court's legal instructions that Your Honor

20   sent out earlier adequately captures the anti-kickback

21   statute.

22         THE COURT:  Let me hear from Mr. Schwartz then.

23   And, Mr. Schwartz, I guess the question on my mind is tell me

24   why you think that the Eighth Circuit's standard is a better

25   one, I guess, than the Eleventh Circuit's, that's what we're

1   dealing with, and what -- first of all, tell me that.

2           MR. SCHWARTZ:  Yes, sir.  It requires a little bit

3   more of a good faith, I guess, position.  And, again, the

4   Eighth Circuit has used this instruction for a long time.  The

5   *Jain* case that counsel referred to is actually cited by the

6   Eighth Circuit in a basis for their instructions.  And the

7   whole thing looks like it kind of hinges on primarily in the

8   Eighth Circuit and that's devoid or not in the Sixth Circuit.

9   In the government's response, Document 372, on Page 6157 of

10  the total record --

11          THE COURT:  I'm looking at it.

12          MR. SCHWARTZ:  -- they talk basically about the fact

13  that this statute is not a fraud based statute, that the

14  defendants don't need to commit a fraud essentially in order

15  to be found guilty of this.  It's not built on that, but I

16  really disagree with that.  And the reason I disagree with

17  that is if you look at even the Sixth Circuit instructions, it

18  basically says that these monies are being offered to induce

19  somebody to get into a covered service that ultimately is paid

20  by Tricare.  And prior to this round of argument, Mr. Piper

21  got up here and said, look, you can be open and notorious

22  about it and it not be considered fraud.  You can tell

23  everybody that you're paying money to do whatever, but if I

24  come to you and I say, you know, it looks like you need this

25  procedure done, and you're like, well, I'm not so sure about

1  it, here's a hundred bucks, go get the procedure done.  The

2  point of me paying you the $100 is to allow me to bill and

3  collect against Tricare for that, that is a fraud in and of

4  itself whether it's titled fraud or not, that's the whole

5  point is to make this fraudulent claim so that I receive

6  money.  And the idea is but for me paying you to do that you

7  wouldn't have done it.  So, even if I get up here and I

8  announce and I advertise that everybody that comes to my place

9  today to get a flu shot will receive a $50 gift card.

10          THE COURT:  Yeah.

11          MR. SCHWARTZ:  The point of that is so that I can

12  give them a shot, I can bill for it, and then I can collect

13  likely higher than the money that I've offered to pay out.

14  But for that payment, you wouldn't have come in likely and I

15  wouldn't have received that remuneration.

16          THE COURT:  Right.

17          MR. SCHWARTZ:  So, I disagree with the government's

18  position that because this isn't a fraud based deal that good

19  faith isn't required.  That's all the Eighth Circuit is doing

20  is basically saying, look, we just have to say that what was

21  received or what was offered to be paid is for purposes of

22  inducing that, not just generally.

23          THE COURT:  Okay.  Mr. Piper, tell me why --

24          MR. PIPER:  Judge, we've already conceded that good

25  faith applies --

```
 1              THE COURT:  Right.

 2              MR. PIPER:  -- to the anti-kickback statutes.  We're

 3   arguing two different issues here.  Whether the Eighth Circuit

 4   pattern instruction includes the word primarily versus what

 5   the Court has decided --

 6              THE COURT:  Well, when the Court decided, it's

 7   adopting the Eleventh Circuit approach.

 8              MR. PIPER:  Yes, sir.  And I don't see any reason --

 9   again, Your Honor, it's one of these things that Your Honor

10   quoted the Wizard of Oz for Ms. Maio how I conceded something

11   after a half hour, remember on that issue of the --

12              THE COURT:  I don't remember.

13              MR. PIPER:  Well, it's in the transcript, Judge, if

14   you look up the Wizard of Oz, you'll see it, but I conceded

15   something to Ms. Maio.  I don't know that we're arguing about

16   something here that makes a hill of beans to the government,

17   but --

18              THE COURT:  What I'm trying to do is make the record

19   clear, and, I mean, if you just want me --

20              MR. PIPER:  If the Court wants to adopt the Eighth

21   Circuit pattern instructions --

22              THE COURT:  The government -- okay.

23              MR. PIPER:  Sure.

24              THE COURT:  Then instead of -- okay.  Then the Court

25   is going to adopt --
```

1          MR. PIPER:  Judge, I've got the Eighth Circuit

2     pattern instructions pulled up and I will e-mail it to Your

3     Honor's chambers.

4          THE COURT:  Thank you.  Thank you.  Government

5     concedes.

6          MR. PIPER:  One more thing on the willfulness aspect

7     that I had neglected to raise earlier.  And these are two

8     district court cases and one of them is *Norton*, and the other

9     one is *Rogan*, *United States versus Norton*, N-O-R-T-O-N, and

10    *Rogan*, R-O-G-A-N.

11         THE COURT:  What are the cites?

12         MR. PIPER:  2000 WL 33281703.

13         THE COURT:  Right.

14         MR. PIPER:  That's *Norton*.  And *Rogan* is 2006 WL

15    8427270.

16         THE COURT:  Okay.

17         MR. PIPER:  And in each of those cases one relies on

18    the other, but in each of those cases, it says, the finder of

19    fact may infer that payments were intended to be kickbacks

20    based upon testimony that the recipient of the payments was

21    "grossly overpaid for any legitimate professional services he

22    may have rendered."

23         THE COURT:  Okay.

24         MR. PIPER:  And really I just want to argue that to

25    the Court, and the Court has heard numerous instances of

1   people, Heather Wyatt Fryar making $33,000 --

2              THE COURT:  Yeah.

3              MR. PIPER:  -- for a half hour of work.  Ryan

4   McGowan making 36,000 for three hours of work, maybe, maybe

5   two hours, he couldn't estimate, but it wasn't very much.  The

6   Court -- and Amanda Morgan Booker making $40,000 for a half

7   hour of work.  And my point is, Judge, and those are all --

8   actually, Ryan McGowan wouldn't be the AKS, but Heather Wyatt

9   Fryar would have been and so would Amanda Morgan Booker.

10             And my point is, Judge, that these two cases discuss

11  the willfulness aspect and whether you can determine, the

12  Court can make, the trier of fact can make a determination of

13  whether it was a kickback based upon the amount of effort put

14  into it as opposed to the amount of money that was made.  And

15  we -- this was hotly contested at trial, Judge.  Every time I

16  asked somebody how much they made, it drew an objection from

17  at least one defense counsel, at least.  And these are two

18  cases that say that's relevant for the purposes of determining

19  whether in fact it was a kickback.

20             THE COURT:  Okay.  Now, all right.  So, here's what

21  I hear you saying.  Okay.  The government will concede that

22  I'm going to use the standards set forth in Mr. Wilkerson's

23  brief, Document 373, but in so doing you want me to consider

24  those two Sixth Circuit opinions.  Correct?

25             MR. PIPER:  Actually, Judge, those are district

1    court opinions.

2              THE COURT:  Or district court opinions.

3              MR. PIPER:  One of them is from the Western District

4    of Virginia and the other one is from the Northern District of

5    Illinois.  And I think there is another, pardon me for sitting

6    down, Judge, I was trying --

7              THE COURT:  That's all right.

8              MR. PIPER:  There is another case from

9    Massachusetts, *Shaw*, but I can also send the Court that blurb

10   if Your Honor --

11             THE COURT:  Yeah.  Well, that's fine.  And, I mean,

12   you know, we've talked a lot obviously about how much money

13   has been made for, you know, how much work.  And, I mean, I

14   understand.  I mean, I think I can consider that.  Let me just

15   say this, though.  I mean, whatever judges or, you know, may

16   say about that, I do wonder what the -- I mean, I don't know

17   if that's -- there is anything in the law about that.  What it

18   is, is individual judges sort of making this what I'm going to

19   refer to as old Puritanical type thing, oh, yeah, if you're

20   going to make a lot of money, you got to really work hard for

21   it.  Well, I guess I was sort of raised that way, too, but, I

22   mean, you know, if you don't have to work hard, make a whole

23   lot of money, is there anything -- at any rate.  All right.  I

24   get that.  Any other objections to the legal standards that

25   the Court intends to apply in deciding this case.  Anybody

1  else?

2         MR. O'SHAUGHNESSY:  Mr. Piper, are those two

3  citations, are the cases in the record somewhere?

4         MR. PIPER:  I will send them to you.

5         MR. O'SHAUGHNESSY:  Okay.

6         THE COURT:  Hearing no further objections, the

7  charge conference is closed.

8         All right.  Okay.  Now, I don't really know what

9  else we have to do except hear from you, if you want, on

10  closing arguments.  Now, let me say this.  Again, I've already

11  thanked you.  The briefs were it's an understatement to say

12  they were thorough, and I do appreciate that.  I think that it

13  might be reasonable if any party just simply wants to rest in

14  their brief, on their brief, you know.  I really cannot -- I

15  can identify very little, if anything, that I really want to

16  ask other than some tangential questions that I might want to

17  address, but having said that, we've been through so much.

18         Does anyone want to be heard independently in terms

19  of a closing argument to either elucidate something they said

20  in their brief or respond in the case of the government that

21  hasn't been said in writing?  I've already assured you I've

22  read these briefs carefully.  Nobody wants to be heard.  Okay.

23         MR. ELDRIDGE:  Your Honor --

24         THE COURT:  Mr. Eldridge, you want to be heard?

25         MR. ELDRIDGE:  I'm prepared to give an argument,

1   Judge.  I don't know that --

2          THE COURT:  You know, I mean, the question is have

3   you said it in your brief.  I've read it --

4          MR. ELDRIDGE:  I understand.

5          THE COURT:  -- at least once, probably multiple

6   times.  Let me see.  Let me look, check my notes here.  I did

7   have -- I know, by the way, I am aware that there are two

8   outstanding other things that I need to decide.  One is an

9   objection to Magistrate Judge Steger's ruling on the admission

10  of Government's Exhibits 2112(a) through (o).  I've read both

11  parties' papers on that.  The other thing I need to decide is

12  Mr. Chatfield's motion for judgment of acquittal as to

13  Count 37.  I've also got the papers on that.  And I will rule

14  on those independently.

15         Let me see if there is anything else.  If nobody

16  else, if nobody really chooses to make a closing argument, let

17  me ask just a couple of questions.

18         MR. ELDRIDGE:  Your Honor --

19         THE COURT:  Do you want to be heard?

20         MR. ELDRIDGE:  I just wanted to notify the Court two

21  things.  One, we are not going to argue further the objections

22  on the admissibility of the tape that we've objected to.

23         THE COURT:  Now, wait a minute.  Are you

24  withdrawing --

25         MR. ELDRIDGE:  No.  No.  We're just standing on our

1  brief.

2          THE COURT:  Okay.  Yeah.  Okay.  And I've got them

3  and I'll make a ruling.

4          MR. ELDRIDGE:  And we're standing on our brief on

5  Count -- the Rule 29 that we filed a separate filing on.

6          THE COURT:  Those two issues.  Okay.  I've got the

7  briefing, I think, the briefing --

8          MR. ELDRIDGE:  We'll stand on that.  As it relates

9  to further argument, I would ask that the Court, I hate to do

10  this, but --

11          THE COURT:  You want to take a break?

12          MR. ELDRIDGE:  I would.

13          THE COURT:  Okay.  Do you want to come back after a

14  lunch break and see what, if anything, you want to say?  Let

15  me -- if you want to take a lunch break, come back at 1:00, we

16  can do that.  I will say this.  One question I have is about

17  duplicity and multiplicity within the indictment which has

18  been thoroughly briefed and I've reserved ruling on it.  It's

19  my understanding the government's position is that any issue

20  as to duplicity or multiplicity of the indictment itself has

21  now been cured as a result of the proof the Court has heard at

22  trial.  Am I correct, Mr. Piper?

23          MR. PIPER:  I would add to that, Your Honor, that

24  the Court can remedy this issue, as the Court has said --

25          THE COURT:  At sentencing.  I know that, but I guess

1    what -- but I think that and at least Mr. Wilkerson, I

2    believe, disagrees that any issue of duplicity or multiplicity

3    has been cured, but I don't have to know that right now, but I

4    am going to need to know it certainly, you know, before this

5    case is sentenced.

6           But what I hear you saying, Mr. Eldridge, is you'd

7    like to take a break, we'll come back at 1:00, and if either

8    party wants to make whatever arguments they want to make, I'll

9    give them the opportunity to do that.  Is that right?

10           MR. ELDRIDGE:  If that's okay with opposing counsel.

11           THE COURT:  Any objection?

12           MR. PIPER:  No, Your Honor.

13           THE COURT:  Okay.

14           MR. ELDRIDGE:  Thank you.

15           THE COURT:  Then let's take, let's be in recess

16    until 1:00.  We'll come, we'll come back then.  Again, I think

17    that each party could reasonably just say, Judge, you know,

18    we've said it all in our briefs, there is nothing left to say,

19    so, but, you know, if you want to talk, well, you're lawyers,

20    I'm a lawyers' dream right, I'll give you an opportunity to

21    talk whatever.

22           So, all right, we'll be in recess until 1:00 p.m.

23           MR. ELDRIDGE:  Thank you, Judge.

24           (Luncheon recess.)

25

1

2          I, Shannan Andrews, do hereby certify that I

3  reported in machine shorthand the proceedings in the

4  above-styled cause held February 4, 2020, and that this

5  transcript is an accurate record of said proceedings.

6

7                          s/Shannan Andrews
                           Shannan Andrews
8                          Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25