**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERRY WAYNE WILKERSON, KASEY NICHOLSON, BILLY HINDMON, and JAYSON MONTGOMERY<br><br>*Defendants*. | No.: 1:18-cr-11<br><br>Judge Travis R. McDonough<br>Magistrate Judge Christopher H. Steger |

## MOTION TO DELAY SURRENDER DATE

Defendants Jerry Wayne Wilkerson, Kasey Nicholson, Billy Hindmon, and Jayson Montgomery (collectively, "Defendants") respectfully move for entry of order delaying their surrender date until after resolution of their petition(s) for writs of certiorari. In support of this motion, Defendants state as follows:

## BACKGROUND

1. After an eleven-week trial, this Court convicted Defendants for various counts of (a) conspiracy to commit healthcare fraud; (b) healthcare fraud; (c) wire fraud; (d) mail fraud; (e) payment of illegal remuneration (payment of illegal kickbacks); (f) receipt of illegal remuneration (receipt of illegal kickbacks); and (g) money laundering. Judge Mattice had explained at one sentencing hearing that he was finding that the Defendants committed fraud based on "some duty" to disclose the cost of certain medicinal creams they were marketing to "someone." Sentencing Tr., R.547, PageID#11394–95. Even though no law required Defendants to disclose the cost of drugs, the court concluded that there was somehow a duty to disclose to "someone" their cost just because they were expensive. At defendant Wilkerson's sentencing, the court stated that "it would have been much better if the law had been clear about exactly where the duty was," but the court

ultimately found "that there is somehow this overarching duty to disclose." Wilkerson Sentencing Tr., R.549, PageID#11602.

2. Thereafter, each of the Defendants filed a notice of appeal appealing their convictions to the Sixth Circuit. The panel affirmed the convictions, without addressing these statements by the district court and inferring a scheme to defraud based on a string of conduct that, while perhaps distasteful, does not demonstrate that Defendants intended to act unlawfully. After the panel issued its judgment, the Supreme Court decided *Ruan v. United States*, 142 S. Ct. 2370 (2022). *Ruan* held that the mens rea element of "knowingly or intentionally" in the Controlled Substances Act requires the government to demonstrate that "a defendant knew or intended that his or her conduct was unauthorized." *Id.* at 2382. Defendants sought panel rehearing and rehearing en banc in light of clarification from *Ruan* that the government bears the burden to establish subjective intent to defraud. Rehearing was denied on August 25, 2022.

3. On August 31, 2022, Defendants filed a motion to stay the mandate. On September 20, 2022, the Sixth Circuit denied that motion. The Sixth Circuit then issued the mandate on September 28, 2022.

4. On November 16, 2022, Defendants filed an application for an extension of time within which to file a petition for a writ of certiorari. The Supreme Court granted that application extending the deadline to January 20, 2023.

**5.** On December 12, 2022, this Court entered an order requiring Defendants to surrender for service of sentence before 2:00 p.m. on February 15, 2023. Order R.602.

**ARGUMENT**

6. Defendants intend to file one or more petitions for certiorari and it is likely that their petitions will be granted. The Sixth Circuit's decision in these cases conflicts with the

Supreme Court's decision in *Ruan*. In *Ruan*, issued after the Sixth Circuit's decision, the issue was whether the government must prove that a person subjectively knew he was prescribing without authorization, or whether it would suffice to prove that he did not make an objectively reasonable effort to prescribe within the bounds of his authorization. The Court held that "knowingly and intentionally" applies to the "except as authorized" portion of the statute, and that language means the government must prove that "a defendant knew or intended that his or her conduct was unauthorized." *Id.* at 2376. The Court's reasoning was based in part on "a longstanding presumption, traceable to common law, that Congress intends to require a defendant to possess a culpable mental state." *Id.* at 2377. *Ruan* thus clarifies that where a criminal statute requires knowing and intentional conduct, the government must prove that a defendant subjectively knew he was acting unlawfully. *Id.* at 2382.

7. The Supreme Court has already granted certiorari, vacated lower court decisions, and remanded a number of cases in light of *Ruan*. *See, e.g., See Henson v. United States*, No. 21-6736 (2021) (involving the government's required showing to convict a defendant under the Controlled Substances Act); *Mencia v. United States*, No. 21-1008 (2021) (involving the proper mens rea required to overcome a good faith defense under the Controlled Substances Act); *United States v. Couch*, No. 20-7934 (2021) (involving whether jury instructions properly explained the mens rea required to convict a defendant under the Controlled Substances Act); *Naum v. United States*, No. 20-1480 (2021) (involving whether the government only needs to show that a prescription was prescribed "outside the usual course of professional practice" to convict a defendant under the Controlled Substances Act).

8. Notably, in *Hofstetter v. United States*, No. 22-5346, the Supreme Court granted certiorari, vacated the Sixth Circuit's decision, and remanded the case in light of *Ruan*. In

*Hofstetter*, the defendant was not a medical professional, she was a business manager, and the issue was whether the lower courts had properly focused on her subjective belief to find criminal liability as required by *Ruan*. There, the district court had instructed the jury that the requisite intent could be inferred if the defendant had deliberately blinded herself to the existence of a fact. The petition explained that the government spent a great deal of time talking about allegations of theft, gambling, and other nefarious alleged conduct to create an objective image of intent. But under *Ruan*, the petition argued, this was error. Conceding this argument, the United States filed a response agreeing that the Court should grant the petition for writ of certiorari, vacate the decision below, and remand the case for further consideration in light of *Ruan*.

9. *Hofstetter* is on point with this case. As in *Hofstetter*, here, the government spun various incidents of conduct by some of the defendants together in an attempt to create an objective impression of intent, however, it failed to put forth evidence of Defendants' subjective intent. Indeed, the panel conceded that each of those incidents of conduct could themselves have an innocent explanation. Panel Opinion at 21. But the panel found those incidents of conduct sufficient to infer Defendants' intent. However, as the petition in *Hofstetter* explained, that is not sufficient under *Ruan*, and the government was required instead to establish the Defendants' subjective intent.

10. Moreover, the Sixth Circuit's decision creates a split among the circuits as to the proper standard for intent in healthcare fraud and anti-kickback cases. Most circuits agree that the government must establish that the defendant knew that his or her actions were fraudulent or unlawful. *See, e.g., United States v. Nora*, 988 F.3d 823, 830 (5th Cir. 2021) (holding that defendant must have "acted with 'bad purpose'" in carrying out his responsibilities; he must have understood his actions to be fraudulent or unlawful to be convicted); *United States v. Nerey*, 877

F.3d 956, 969 (11th Cir. 2017) (explaining that "willfully" under the anti-kickback statute means "with the specific intent to do something the law forbids, that is with a bad purpose"); *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007) (explaining that "in a health care fraud case, the defendant must be shown to have known that the claims submitted were, in fact, false"); *United States v. Troisi*, 849 F.3d 490, 494 n.8 (1st Cir. 2017) ("'willfulness' is normally understood to encompass 'specific intent,' and both terms require a finding that the defendant acted with a purpose to disobey or disregard the law, rather than by ignorance, accident, or mistake"); *see also Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*, 42 F.4th 67, 77 (2d Cir. 2022) (explaining that "willfully" as used in the anti-kickback statute means "a voluntary, intentional violation of a known legal duty"; the willfulness element is meant "to avoid punishing 'an individual whose conduct, while improper, was inadvertent'"—"the [anti-kickback statute] does not apply to those who are unaware that such payments are prohibited by law and accidentally violate the statute.").

11. But the Sixth Circuit did not follow this established precedent. The panel inferred fraudulent intent based on conduct that is standard pharmaceutical marketing practice and is not illegal. For example, the panel decision found that "defendants demonstrated their intent to defraud" because they targeted friends and family with specific health insurance, told customers that their information may be used in a clinical trial, paid patient's co-pays, used pre-set formula pads, and paid commissions. But these facts are not illegal conduct. Unlike the defendants in *Nerey* and *Troisi*, Defendants did not engage in conduct that was itself plainly fraudulent. Defendants did not make false statements on forms, did not instruct medical professionals to make false statements, and did not attempt to hide the source of payments or create a "fallback story."

*See Nerey*, 877 F.3d at 969; *Troisi*, 849 F.3d 495–96. Instead, this case involves conduct done without bad purpose, as in *Nora* and *Medina*.

12. In light of these circumstances and the Supreme Court's recent trend of granting certiorari in similar cases in light of *Ruan*, it is likely that the Supreme Court will grant certiorari in this case.

13. Moreover, requiring Defendants to surrender prior to resolution of their petitions for certiorari would result in irreparable harm. Requiring Defendants to serve prison time while the Supreme Court considers their cases could result in Defendants potentially losing months of freedom. This loss of liberty constitutes irreparable harm. *See Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (noting that loss of liberty is "perhaps the best example of irreparable harm"); *Lake v. Speziale*, 580 F. Supp. 1318, 1335 (D. Conn 1984) (observing that "there is no adequate remedy at law for a deprivation of one's physical liberty"); *see also United States v. McManus*, 651 F. Supp. 382, 383-84 (D. Md. 1987) ("There seems little point to an appeal if the defendant will serve his time before a decision is rendered.); *Mickens v. Taylor*, 243 F.3d 870, 871 (4th Cir. 2001) (Michael, J., joined by Motz & King, JJ., dissenting from denial of stay) (explaining defendant should not be imprisoned "before he has a fair opportunity to seek Supreme Court review.").

14. And the public interest is served by ensuring that the innocent are not wrongfully incarcerated. *See U.S. ex rel. Newman v. Rednour*, 917 F. Supp. 2d 765, 789 (N.D. Ill. 2012) ("The public has a significant interest in ensuring that individuals are not imprisoned in violation of the Constitution."). Here, there is at least reasonable doubt as to whether the Defendants had the requisite subjective intent to commit unlawful acts, as demonstrated by the District Court's comments at the various sentencing hearings. Because the panel applied the wrong standard and

failed to address this reasonable doubt, the Defendants are seeking Supreme Court review, which may result in reversal of their convictions or additional proceedings under the proper standard that eventually result in acquittal. As a result, Defendants will have served prison time unnecessarily.

15. Additionally, none of the Defendants is a flight risk or a danger to the community. Indeed, Judge Mattice found that any concern that Defendants would flee or pose a danger to others is "virtually non-existent" when granting their motion for bond pending appeal. *Order Granting Joint Motion for Bond Pending Appeal*, R. 573, PageID#11960. Defendants have since complied with all conditions of their release, and the government can point to no facts demonstrating that Judge Mattice's assessment is now inaccurate.

16. A February 15, 2023, report date will also cause significant hardship for Defendant Nicholson. Nicholson has a lease that ends on March 1, 2023, and needs until that date to make other arrangements for her belongings. In addition, Nicholson has work appointments on schedule through the end of February.

17. In the alternative, Defendants with a January 10, 2023 report date request that their deadline to surrender be extended to February 15, 2023.

**CONCLUSION**

18. Accordingly, the Court should enter an order delaying Defendants' surrender date until after resolution of their petitions for writs of certiorari.

Dated: January 5, 2023

Respectfully submitted,

By: */s/ R. Dee Hobbs*

R. Dee Hobbs
Bell & Hobbs
P.O. Box 11308
Chattanooga, TN 37401
Telephone: (423) 266-6461
Email: bell.hobbslaw@gmail.com
Tennessee Bar # 10482
*Counsel for Defendant Jayson Montgomery*

DEBORAH L. WILLIAMS
Federal Public Defender

*/s/ Kevin M. Schad*

Kevin M. Schad
Appellate Director
250 E. Fifth St., Suite 350
Cincinnati OH 45202
Telephone: (513) 929-4834
Email: Kevin_Schad@fd.org
*Counsel for Defendant-Appellant Kasey Nicholson*

*/s/ Mark S. Thomas*

Mark S. Thomas
THOMAS HEALTH LAW GROUP, PA
5200 SW 91st Terrace, Suite 101-B
Gainesville, FL 32608
Phone: 352-372-9990
Email: mark@thomashlg.com

-and-

Seth A. Schwartz
Florida Bar No. 0739421
Schwartz Law Group, P.A.
10365 Hood Road South, Suite104
Jacksonville, FL 32257
(904) 292-0222 (office)
(904)-292-0044 (fax)
Email: seth@flaattorney.net

*Counsel for Defendant Jerry Wayne Wilkerson*

*/s/ Gianna M. Maio*

Gianna M. Maio
Federal Defender Services of
Eastern Tennessee, Inc.
800 Georgia Ave., Suite 600
Chattanooga, TN 37402
Phone: (423) 756-4349
Email: Gianna_Maio@fd.org
*Counsel for Defendant Billy Hindmon*

## CERTIFICATE OF SERVICE

This motion was filed electronically on January 5, 2023, and notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ R. Dee Hobbs*
R. Dee Hobbs